**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| GEORGIA STATE CONFERENCE OF THE NAACP, et al. | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| v. | ) | Case No. 1:21-CV-5338- |
| STATE OF GEORGIA, et al. | ) | ELB-SCJ-SDG |
| *Defendants.* | ) | |
| _____ | ) | |
| COMMON CAUSE, et al., | ) | |
| *Plaintiffs*, | ) | Case No. 1:22-CV-00090- |
| v. | ) | ELB-SCJ-SDG |
| BRAD RAFFENSPERGER | ) | |
| *Defendant.* | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**JOINT PRELIMINARY REPORT AND DISCOVERY PLAN**

1

1. **Description of Case:**
   a. **Describe briefly the nature of this action**

This is a joint preliminary report and discovery plan submitted by the parties in the two consolidated redistricting lawsuits brought under Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301 (the "VRA") and the United States Constitution.  The lawsuits include the following parties and claims.

- *Georgia State Conf. of the NAACP, et al. v. State of Georgia, et al.*, No. 1:21-cv-5338-SCJ-SDG-ELB.

    o <u>Plaintiffs</u>: Georgia State Conference of the NAACP; Georgia Coalition for the Peoples Agenda, Inc.; Galeo Latino Community Development Fund, Inc.

    o <u>Defendants</u>: State of Georgia; Brian Kemp, in his official capacity as Governor of Georgia; Brad Raffensperger, in his official capacity as Georgia Secretary of State.

    o <u>Claims</u>: Plaintiffs contend that the Georgia General Assembly enacted redistricting plans for the Georgia State Senate ("SB 1EX"), the Georgia House of Representatives ("HB 1EX"), and the Georgia congressional districts ("SB 2EX") that are racial gerrymanders in violation of the U.S. Constitution, that unlawfully dilute minority voting strength in violation of Section 2 of the VRA, and that were

drawn with a discriminatory purpose in violation of Section 2 of the VRA.

o Defendants deny that SB 1EX, HB 1EX, and SB 2EX dilute Black voting strength; deny that SB 1EX, HB 1EX, and SB 2EX are racial gerrymanders; and deny that SB 1EX, HB 1EX, and SB 2EX violate any provision of the law.

- *Common Cause, et al. v. Raffensperger*, No. 1:22-cv-00090-SCJ-SDG-ELB.

   o <u>Plaintiffs</u>: Common Cause; League of Women Voters of Georgia; Dr. Ursula Thomas; Jasmine Bowles; Dr. H Benjamin Williams; Brianne Perkins; Cheryl Graves.

   o <u>Defendant</u>: Brad Raffensperger, in his official capacity as Georgia Secretary of State.

   o <u>Claims</u>: Plaintiffs contend that Georgia Congressional Districts 6, 13, and 14 are racial gerrymanders in violation of the U.S. Constitution.

   o Defendant denies that any congressional district in SB 2EX is a racial gerrymander or violates any provision of the law.

   **b. Summarize, in the space provided below, the facts of this case. The summary should not be argumentative nor recite evidence.**

<u>Plaintiffs' Statement of Facts:</u>

Since 2000, Georgia's population became increasingly diverse with substantial increases in the populations of Black, Latinx, and AAPI residents in the state. For example, Georgia's Black population has increased by over 1.1 million people, now representing one-third of the state's total population. However, despite these striking demographic changes, the number of majority-minority congressional, State Senate, and State House districts has barely changed. There have been no majority-Black State Senate districts and just two majority-Black House districts added since the prior redistricting plans, while the new congressional plan similarly fails to reflect the growth in Georgia's Black community. There is also a substantial gap between the number of Black Georgians living in majority-Black districts and the number of white Georgians living in majority-white districts—a further indicator that the number of majority-Black districts is disproportionately low and that Black voting strength is being unlawfully diluted. Similar trends are present in the Latinx and AAPI populations.

The new maps enacted by the Georgia General Assembly, and signed into law by the Georgia Governor, both have the effect of diluting the voting strength of these voters of color and were intentionally drawn to cause this effect. Moreover, racial considerations predominated over traditional redistricting principles in the drawing of Congressional, State House, and State Senate districts. In the congressional map,

4

the voting strength of Black voters in the Atlanta Metropolitan area was diluted; racial considerations predominated over traditional redistricting principles in the drawing of the congressional districts; and lines were drawn with the intent to dilute Black voting strength. In the State Senate map, minority voters across the State— including in areas around Central Georgia, Spalding, Clayton, and Fayette Counties, Cobb County, and the East Black Belt—have had their voting strength diluted, and the State Senate districts in those and other areas of the State are racial gerrymanders and were drawn with the intent to dilute the voting strength of voters of color.  And in the State House map, the voting strength of Black voters and other voters of color across the State—including in areas around Douglas and Fulton Counties, the South Atlanta Exurbs, Henry County, Newton and Rockdale Counties, Houston, Peach, and Bibb Counties, Baldwin County, Dougherty County, and Hall County—was diluted, and the State House districts in those and other areas of the State are racial gerrymanders and were drawn with the intent to dilute the voting strength of voters of color.

Also, voting is highly polarized in these areas and Statewide, with voters of color politically cohesive and usually support the same candidates of choice, while white voters are politically cohesive and usually support different candidates of choice.  In both statewide and localized contests, the white majority usually votes as

a bloc to defeat the candidates preferred by voters of color unless districts are drawn to provide voters of with opportunities to elect candidates of their choice.

Defendants' Statement of Facts:

Before and after receiving the COVID-delayed 2020 Census data, the General Assembly engaged in an extensive process to obtain input from voters and legislators about the communities and jurisdictions throughout Georgia to inform the map-drawing process. After receiving that input, meeting with members of both parties, and adopting guidelines, the chairs of each committee released draft plans for Congress, Senate, and House, that were later modified before final passage after further input. In creating those plans, the General Assembly carefully balanced traditional redistricting principles and created plans that fairly represent the people of Georgia—of all races.

Black voters were not improperly packed into districts and Plaintiffs can only demonstrate additional majority-Black districts that the General Assembly did not draw by subjugating traditional redistricting principles to race as the primary consideration. Further, the General Assembly did not improperly consider race in creating districts. Further, voting in Georgia is polarized on a partisan basis, not a racial one, and Plaintiffs are unable to establish that the Georgia election system is

not equally open to voters of all races. Plaintiffs will be unable to demonstrate any illegal vote dilution and cannot support racially gerrymandered maps as remedies.

### c.  The legal issues to be tried are as follows:

- Whether the failure to create 1 additional majority-Black congressional district in which Black voters have an opportunity to elect candidates of their choice violates Section 2 of the VRA.

- Whether the Defendants chose to not create 1 additional majority-Black congressional district with discriminatory intent in violation of Section 2 of the VRA.

- Whether certain congressional districts are racial gerrymanders in violation of the U.S. Constitution.

- Whether the failure to create 5 additional majority-minority State Senate coalition districts in which voters of color have an opportunity to elect candidates of their choice violates Section 2 of the VRA.

- Whether the Defendants chose to not create 5 additional majority-minority State Senate coalition districts with discriminatory intent in violation of Section 2 of the VRA.

- Whether certain State Senate districts are racial gerrymanders in violation of the U.S. Constitution.

- Whether the failure to create 8 additional majority-minority State House coalition districts in which voters of color have an opportunity to elect candidates of their choice violates Section 2 of the VRA.

- Whether the Defendants chose to not create 8 additional majority-minority State House coalition districts with discriminatory intent in violation of Section 2 of the VRA.

- Whether certain State House districts are racial gerrymanders in violation of the U.S. Constitution.

- The standing of Plaintiffs to bring these cases.

  **d. The cases listed below (include both style and action numbers) are:**

  **i. Pending Related Cases**

- *Alpha Phi Alpha Fraternity, Inc. et al. v. Raffensperger*, No. 1:21-cv-05337-SCJ.

- *Pendergrass et al. v. Raffensperger et al.*, No. 1:21-cv-05339-SCJ.

- *Grant et al. v. Raffensperger et al.*, No. 1:22-cv-00122-SCJ.

  **ii. Previously Adjudicated Related Cases:**

None.

**2. This case is complex because it possesses one or more of the features listed below (please check):**
**_____ (1) Unusually large number of parties**
**_____ (2) Unusually large number of claims or defenses**
**_____ (3) Factual issues are exceptionally complex**

**_____ (4) Greater than normal volume of evidence**
**_____ (5) Extended discovery period is needed**
**_____ (6) Problems locating or preserving evidence**
**_____ (7) Pending parallel investigations or action by government**
**_X_ (8) Multiple use of experts**
**_____ (9) Need for discovery outside United States boundaries**
**_____ (10) Existence of highly technical issues and proof**
**_____ (11) Unusually complex discovery of electronically stored information**

3. **Counsel:**

   The following individually-named attorneys are hereby designated as lead counsel for the parties:

   - <u>Georgia NAACP Plaintiffs</u>:  Toni Michelle Jackson, Astor Heaven, Julie Houk, and Ezra Rosenberg.

   - <u>Common Cause Plaintiffs</u>: Neil Steiner, Hartley West, Sharon Turret, Jack Genberg, Bradley Heard, and Poy Winichakul.

   - <u>Defendants</u>: Bryan Tyson

4. **Jurisdiction:**

   **Is there any question regarding this Court's jurisdiction?**

Plaintiffs have no questions regarding this Court's jurisdiction.

Defendants' questions about the Court's jurisdiction in *Ga. NAACP* case are outlined in their Motion to Dismiss, which is incorporated by reference. Defendants do not have questions about jurisdiction in the *Common Cause* case.

5. **Parties to this Action:**

9

    **a.  The following persons are necessary parties who have not been joined:**

None.

    **b.  The following persons are improperly joined as parties:**

None.

    **c.  The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:**

None.

    **d.  The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.**

**6.  Amendments to the Pleadings:**

**Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed. R. Civ. P. 15. Further instructions regarding amendments are contained in LR 15.**

    **a.  List separately any amendments to the pleadings that the parties anticipate will be necessary.**

The Georgia NAACP Plaintiffs' request to file an amended complaint was filed on March 30, 2022.  *See* Dkt. No. 56.  Other than this request, the Georgia NAACP Plaintiffs do not anticipate filing any requests to amend the pleadings.

    **b.  Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.**

**7.  Filing Times for Motions:**

All motions, with the exception of motions for preliminary injunction which may be filed during or shortly after the close of formal discovery, should be filed as

soon as possible. The local rules set specific filing limits for some motions. These times are restated below.

All other motions must be filed WITHIN THIRTY DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later. Local Rule 7.1A(2).

**(a)** *Motions to Compel*: before the close of discovery or within the extension period allowed in some instances. Local Rule 37.1.

**(b)** *Summary Judgment Motions:* within thirty days after the close of discovery, unless otherwise permitted by court order. Local Rule 56.1.

**(c)** *Other Limited Motions*: Refer to Local Rules 7.2A; 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.

**(d)** *Motions Objecting to Expert Testimony:* Daubert motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted. Refer to Local Rule 7.2F.

**8. Initial Disclosures:**

**The parties are required to serve initial disclosures in accordance with Fed. R. Civ. P. 26. If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection. NOTE: Your initial disclosures should include electronically stored information. Refer to Fed. R. Civ. P. 26(a)(1)(B).**

No parties object to serving initial disclosures.

**9. Request for Scheduling Conference:**

**Does any party request a scheduling conference with the Court? If so, please state the issues which could be addressed and the position of each party.**

Plaintiffs request that this Court hold a scheduling conference with the parties to set a trial calendar, and, if necessary, adjust other scheduled dates, so that final judgment can be implemented in time for the 2024 election. During the Rule 26(f) conference, Plaintiffs asked Defendants to identify a window of dates where—if trial were to occur during that window, and a decision were to be issued a reasonable time following that window—implementation of the maps in time for the 2024 election would be feasible for election administrators in Georgia, so that the case calendar can be adjusted, if needed. In response, Defendants have stated that "if trial does not occur until late in 2023, it may be too late to implement any remedy for the 2024 elections" and also that "[w]e [Defendants] have been unable to identify a particular date at which it will definitely be too late to implement a remedy, but generally note that the legislature completed drawing the plans in November 2021 and there was time to implement the plans for the 2022 elections."

Defendants do not believe that any adjustments are needed to the existing schedule provided by the Court.

**10. Discovery Period:**

**The discovery period commences thirty days after the appearance of the first defendant by answer to the complaint. As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.**

The parties anticipate that discovery will begin on May 13, 2022, according to the scheduling order issued by the Court on February 1, 2022. *See GA NAACP*, Dkt. No. 34; *Common Cause*, Dkt. No. 22.

**Cases in this Court are assigned to one of the following three discovery tracks: (a) zero month discovery period, (b) four months discovery period, and (c) eight months discovery period. A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F. The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.**

**Please state below the subjects on which discovery may be needed:**

- The effects of SB 2EX, SB 1EX, and HB 1EX on populations of voters of color (including Black, Latinx, and AAPI voters) across Georgia.

- The intent behind the creation of SB 2EX, SB 1EX, and HB 1EX, including at least any drafts of these maps and related communications.

- The consideration of race in the design of certain Congressional, State House, and State Senate districts, and the reason(s) for such consideration.

- All persons and institutions that participated in all aspects of the creation of SB 2EX, SB 1EX, and HB 1EX.

- Statewide maps and geographic information.

- Election histories and candidates for Georgia state senate, Georgia state house, and Georgia congressional seats.

- Racially polarized voting.

13

- Political polarization.

- The history of racial discrimination in voting in Georgia.

- The extent to which minority group members bear the effects of discrimination in areas such as education, employment, and health, which hinder their ability to participate in the political process.

- The use of racial appeals in political campaigns.

- The extent to which Georgia has used voting practices that tend to enhance the opportunity for discrimination against minorities.

- The extent to which minorities have been elected to public office.

- The standing of plaintiffs

**If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:**

Plaintiffs request that the parties follow the discovery schedule issued by the Court on February 1, 2022. *See GA NAACP*, Dkt. No. 34; *Common Cause*, Dkt. No. 22. Under this schedule, fact discovery begins May 13, 2022; fact discovery ends on November 23, 2022; expert discovery begins on December 5, 2022; expert discovery ends on February 17, 2023. A trial date has not been set by the Court. Defendants note that if trial does not occur until late in 2023, it may be too late to implement any remedy for the 2024 elections. Plaintiffs request that this Court hold

14

a scheduling conference with the parties to discuss this issue and set a trial calendar, and, if necessary, adjust other scheduled dates, so that final judgment can be implemented in time for the 2024 election.

**11. Discovery Limitation and Discovery of Electronically Stored Information:**

**(a) What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?**

[The parties are not aware of any.

**(b) Is any party seeking discovery of electronically stored information?**

**___X___** Yes          _____ No

**If "yes,"**

**(1) The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:**

The parties agree to meet and confer further to develop a proposed Consent Order relating to ESI. The parties plan to submit their proposed ESI order no later than May 27, 2022. In the event the parties are unable to come to agreement on the terms of a consent order, the parties will submit their respective positions on such an order.

**(2) The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production**

15

**(e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:**

Please see the response to question 11(b)(1) above.

**In the absence of agreement on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.**

**12. Other Orders:**

**What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?**

The parties agree that the Common Cause Plaintiffs and the GA NAACP Plaintiffs are both entitled to 25 interrogatories and 15 fact depositions, and Defendants are entitled 25 interrogatories and 30 fact depositions. Expert depositions are not impacted by these limits. The parties may increase the number of interrogatories or fact depositions without court leave upon mutual agreement.

**13. Settlement Potential:**

    **a.** **Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on May 3, 2022, and that they participated in settlement discussions. Other persons who participated in the settlement discussions are listed according to party.**

- <u>GA NAACP Plaintiffs</u>: Toni Michelle Jackson, Astor Heaven, Ezra Rosenberg, Julie Houk

- <u>Common Cause Plaintiffs</u>: Neil Steiner, Sharon Turret, Jack Genberg, and Bradley Heard.

- <u>Defendants</u>: Bryan Tyson

  **b. All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now**

(_____) A possibility of settlement before discovery.
(_____) A possibility of settlement after discovery.
(_____) A possibility of settlement, but a conference with the judge is needed.
(__xx__) No possibility of settlement.

  **c. Counsel (_____) do or (__X___) do not intend to hold additional settlement conferences among themselves prior to the close of discovery. The proposed date of the next settlement conference is _____, 20____.**

  **d. The following specific problems have created a hindrance to settlement of this case.**

The parties do not agree on the appropriate remedy in light of the allegations raised by Plaintiffs in the two actions.

  **14. Trial by Magistrate Judge:**

  **Note: Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.**

  **(a)** The parties (_____) do consent to having this case tried before a magistrate judge of this Court. A completed Consent to Jurisdiction by a United States Magistrate Judge form has been submitted to the clerk of court this _____ day _____, of 20___.

  **(b)** The parties (__X___) do not consent to having this case tried before a magistrate judge of this Court.

Respectfully submitted this 13th day of May, 2022.

17

Respectfully submitted,

By:   _/s/ Kurt Kastorf_____
**Georgia Bar No. 315315**
**KASTORF LAW LLP**
1387 Iverson St., Suite 100
Atlanta, GA 30307
(404) 900-0030
kurt@kastorflaw.com


Jon Greenbaum*
Ezra D. Rosenberg*
Julie M. Houk*
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
jhouk@lawyerscommittee.org
 **LAWYERS' COMMITTEE FOR**
**CIVIL RIGHTS UNDER LAW**
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

*Pro Hac Vice*

*Georgia State Conference of the NAACP*
 *Plaintiffs*

Toni Michelle Jackson*
Astor H.L. Heaven*
Keith Harrison*
tjackson@crowell.com
aheaven@crowell.com
kharrison@crowell.com
aheaven@crowell.com
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone: (202) 624-2500

*Pro Hac Vice*

By:   */s/ Jack Genberg*
Jack Genberg (Ga. Bar 144076)
Bradley Heard (Ga. Bar 342209)
Pichaya Poy Winichakul (Ga. Bar 246858)
**SOUTHERN POVERTY LAW CENTER**
150 E Ponce de Leon Av, Suite 340
Decatur, GA 30030
Telephone: (404) 521-6700
Facsimile: (404) 221-5857
jack.genberg@splcenter.org
bradley.heard@splcenter.org
poy.winichakul@splcenter.org

*Common Cause Plaintiffs*

19

Neil Steiner*
Sharon Turret*
**DECHERT LLP**
Three Bryant Park, 1095 Avenue of the
Americas
New York, NY 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
neil.steiner@dechert.com
sharon.turret@dechert.com

Hartley M.K. West*
**DECHERT LLP**
One Bush Street, Suite 1600
San Francisco, CA 94104-4446
Telephone: (415) 262-4500
Facsimile: (415) 262-4555
hartley.west@dechert.com

*Pro Hac Vice*

By:   _/s/ Bryan P. Tyson_
**Bryan P. Tyson**
Taylor English Duma LLP
Suite 200
1600 Parkwood Circle
Atlanta, GA 30339
770-434-6868
770-434-7376 (fax)
btyson@taylorenglish.com

*State Defendants*