IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEORGIA STATE CONFERENCE OF THE NAACP, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> STATE OF GEORGIA, *et al.*, <br><br> *Defendants*. | CIVIL ACTION <br><br> FILE NO. 1:21-CV-05338-SCJ |

## BRIEF IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

The Amended Complaint [Doc. 59] is one of five cases challenging the State of Georgia's recently enacted congressional and state legislative redistricting plans. Because of the overlapping claims, issues, and facts, this Court already consolidated this case with *Common Cause, et. al. v. Raffensperger, et al.*, 1:22-cv-00090-SCJ-SDG-ELB [Doc. 40]. But as this Court noted, this case contains one important difference from *Common Cause*—it seeks relief pursuant to Section 2 of the Voting Rights Act of 1965, as amended ("VRA"), in addition to its constitutional claims. And despite the lengthy history of private plaintiffs seeking relief under Section 2, the statute itself confers no avenue for private parties to obtain relief.

Instead, only the United States Attorney General can seek relief under Section 2. Two Justices on the U.S. Supreme Court recently noted that that Court has simply, "assumed—without deciding—that the Voting Rights Act of 1965 furnishes an implied cause of action under § 2." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021) (Gorsuch, J., concurring). This motion addresses that open question.

Unlike earlier cases involving the VRA, courts have more recently recognized that "judicially implied rights of action are now extremely disfavored." *Ark. State Conference NAACP v. Ark. Bd. of Apportionment*, No. 4:21-cv-01239-LPR, ___ F. Supp. 3d ___, 2022 U.S. Dist. LEXIS 29037, at *23 (E.D. Ark. Feb. 17, 2022) ("*Ark. NAACP*"). "If the statute itself does not display an intent to create a private remedy, then a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017) (internal citations omitted). And "because no private right of action exists to enforce § 2 of the Voting Rights Act, none of the jurisdictional statutes identified by Plaintiffs actually confer jurisdiction on this Court." *Ark. NAACP* at *21.

## ARGUMENT AND CITATION OF AUTHORITY

The pertinent legal standards are clear: Where a motion to dismiss is brought pursuant to Fed. R. Civ. Proc. 12(b)(1), the Court must satisfy itself that it has jurisdiction over the matter. *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 732 n.9 (11th Cir. 1982). And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009). While this Court must assume the veracity of well-pleaded factual allegations, it is not required to accept legal conclusions "couched as [] factual allegation[s]." *Id*. at 678-79. This Court may consider any matters appropriate for judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Application of these settled standards requires dismissal.

Let's begin with the text: it is clear on its face that Section 2 provides no private enforcement mechanism. And the sole enforcement section of the VRA provides *only* the Attorney General with a cause of action to enforce Section 2. *See* 52 U.S.C. 10308(d) ("Whenever any person has engaged . . . in any act or practice prohibited by section 10301 . . . the Attorney General may

3

institute for the United States, or in the name of the United States, an action for preventive relief . . . ."). This language has prompted the Supreme Court to acknowledge that "[Section] 2 . . . provides no right to sue on its face" and "lack[s] . . . express authorizing language" for private suits. *Morse v. Republican Party of Va.,* 517 U.S. 186, 232 (1996) (Stevens, J., plurality opinion); *id.* at 240 (Breyer, J., concurring in the judgment) (describing any "right of action to enforce [Section] 2" as an "implied private right of action"). Nevertheless, private actions under Section 2—like this case—persist. To understand why the Court has permitted these claims for so long without a definitive answer on whether a private right of action exists, it is necessary to briefly examine the history of the VRA.

Not long after the VRA became law, the Supreme Court decided *Allen v. State Board of Elections*, in which the Court implied a private right of action to enforce Section 5 of the VRA.[1] 393 U.S. 544 (1969). The Court reasoned that "[t]he guarantee of Section 5 that no person shall be denied the right to vote… might well prove an empty promise unless the private citizen were allowed to seek judicial enforcement of the prohibition." *Id.* at 556-57.

---

[1] Unlike Section 2, Section 5 dealt with the "preclearance" process whereby certain jurisdictions had to obtain prior approval from the Attorney General or the District Court for the District of Columbia prior to enforcing changes in election laws.

4

This ruling, of course, did not address Section 2 of the VRA. And in any event, the decades that followed saw the Supreme Court steadily chip away at what it would later call its "*ancien regime,*" exemplified by *Allen,* where the Court would somewhat readily find implied rights of action to shore up weak statutory-enforcement language. *Ziglar*, 137 S. Ct. at 1855. As one district court recently put it, "*Allen* has been relegated to the dustbin of history." *Ark. NAACP* at *33.

Today, courts look carefully at the text of a statute before finding an implied private right of action or remedy where Congress declined to speak to one. "Having sworn off the habit of venturing beyond Congress's intent, we will not accept [plaintiffs'] invitation to have one last drink." *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001). More recently, the Supreme Court instructed that when addressing Section 2 in a new context, "a fresh look at the statutory text is appropriate." *Brnovich*, 141 S. Ct. at 2326. And following the Supreme Court's decision in *Shelby County v. Holder*, 570 U.S. 529 (2013), resourceful plaintiffs' attorneys are finding new contextual scenarios in which to bring Section 2 claims that were historically brought pursuant to the now inoperative Section 5. This counsels in favor of looking at the text of Section 2 anew.

The text of Section 2 of the VRA does not contain a private right of action to enforce it:

(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title, as provided in subsection (b).

(b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: *Provided*, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

52 U.S.C. § 10301(a)–(b). So, to the extent Plaintiffs claim to have a private right of action read in by the judiciary, they must look elsewhere in the VRA for it. And although "Congress is not required to place a remedy in every provision of every statute it passes," *Ark. NAACP* at *25, an examination of the VRA ultimately evinces a design by Congress that precludes private enforcement of Section 2.

6

The *Ark. NAACP* case provides a thorough analysis on this point and it need not be exhaustively repeated here. But a high-level review shows that Section 12 of the VRA is "the only remedial provision that Congress provided for violations of [Section] 2." *Id*. And that Section is "focused entirely on enforcement proceedings instituted by the Attorney General of the United States." *Id*. This creates a "problem for the Plaintiffs because '[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude other.'" *Id*. (quoting *Sandoval*, 532 U.S. at 290).

Following its analysis of the VRA, the *Ark. NAACP* district court concluded that "the text and structure of the Voting Rights Act does not manifest an intent to create a private remedy for Section 2 violations." *Id*. at *32 (cleaned up and internal citations omitted). This interpretation is not really a new one so much as it is an underexplored one. And much of the existing jurisprudence that assumed—without deciding—that Section 2 provided a private right of action "rests on an erroneous assumption that 'a legislature never adopts half-way measures, never attacks the easy part of the problem without attacking the more sensitive part as well.'" *Ala. State Conf. of the NAACP v. Alabama*, 949 F.3d 647, 658 (11th Cir. 2020) (Branch,

J., dissenting) (quoting *Morse v. Republican Party of Virginia*, 517 U.S. 186, 246 (1996) (Scalia, J., dissenting)).

Granted, other district courts have reached different conclusions, relying on the language in *Morse* and the history of Section 2 cases. *See, e.g, Alpha Phi Alpha v. Raffensperger*, Case No. 1:21-cv-05337-SCJ (N.D. Ga. Jan. 28, 2022), Doc. No. 65, slip op. at 31–34 (collecting cases and finding private right of action exists). A closer review of the entirety of the VRA demonstrates that Section 2 is enforceable—but only by the Attorney General and not by every individual plaintiff who wishes to take up the cause.

## CONCLUSION

As much as the courts might like to imply a private right of action to enforce Section 2 of the VRA, Congress did not create one. And it is not for the courts to return to its *ancien regime* for "one last drink" to fix statutes they might find wanting. For the foregoing reasons, the Court should dismiss Count II of the Plaintiffs' Complaint, as well as dismiss the Section 2 related claims in Count III. The proper party to bring those claims is the Attorney General of the United States.

Respectfully submitted this 20th day of May, 2022.

    Christopher M. Carr
    Attorney General
    Georgia Bar No. 112505
    Bryan K. Webb
    Deputy Attorney General
    Georgia Bar No. 743580
    Russell D. Willard
    Senior Assistant Attorney General
    Georgia Bar No. 760280
    Charlene S. McGowan
    Assistant Attorney General
    Georgia Bar No. 697316
    40 Capitol Square, S.W.
    Atlanta, Georgia 30334

    */s/Bryan P. Tyson*
    Bryan P. Tyson
    Special Assistant Attorney General
    Georgia Bar No. 515411
    btyson@taylorenglish.com
    Frank B. Strickland
    Georgia Bar No. 687500
    fstrickland@taylorenglish.com
    Bryan F. Jacoutot
    Georgia Bar No. 668272
    bjacoutot@taylorenglish.com
    Loree Anne Paradise
    Georgia Bar No. 382202
    lparadise@taylorenglish.com
    **TAYLOR ENGLISH DUMA LLP**
    1600 Parkwood Circle, Suite 200
    Atlanta, GA 30339
    Telephone: (678) 336-7249

    *Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned certifies that the foregoing Brief has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Bryan P. Tyson*
Bryan P. Tyson