**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

GEORGIA STATE CONFERENCE OF THE
NAACP; GEORGIA COALITION FOR THE
PEOPLE'S AGENDA, INC.; GALEO
LATINO COMMUNITY DEVELOPMENT
FUND, INC.,

      *Plaintiffs*,

v.

STATE OF GEORGIA; BRIAN KEMP, in his
official capacity as the Governor of the State of
Georgia; BRAD RAFFENSPERGER, in his
official capacity as the Secretary of State of
Georgia,

      *Defendants*.

_____

Case No. 21-cv-5338

## **PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

ARGUMENT ..........................................................................................................3

    I.    Congress Intended a Private Right of Action for Section 2
        Enforcement..........................................................................................3

        A.    The Issue Was Resolved Against Defendants in *Morse v.
               Republican Party*.......................................................................4

        B.    The Language and Structure of the VRA Indicate
               Congressional Intent to Create a Private Right of Action. ........6

        C.    The Legislative History Confirms Congressional Intent to
               Create a Private Right of Action to Enforce Section 2 of
               the VRA..................................................................................13

        D.    Congress Must Be Presumed To Have Been Aware of the
               Application of the Private Right of Action..............................17

CONCLUSION .....................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott v. Perez*,
    138 S. Ct. 2305 (2018) ........................................................................17

*Ala. State Conf. NAACP v. Alabama*,
    949 F. 3d 647 (11th Cir. 2020)........................................................5, 9

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ...................................................................*passim*

*Allen v. State Bd. of Elections*,
    393 U.S. 544 (1969) ............................................................13, 14, 15

*Alpha Phi Alpha Fraternity, Inc. v. Raffensperger*,
    No. 1:21-cv-5337-SCJ, 2022 WL 633312 (N.D. Ga. Feb. 28, 2022) .................5

*Arakaki v. Hawaii*,
    314 F.3d 1091 (9th Cir. 2002)..........................................................18

*Arbor Hill Concerned Citizens v. Cty. of Albany*,
    357 F.3d 260 (2d Cir. 2004)..............................................................18

*Ark. State Conf. NAACP v. Ark. Bd. Apportionment*,
    2022 WL 496908 (E.D. Ark. Feb. 17, 2022) .............................................*passim*

*Bartlett v. Strickland*,
    556 U.S. 1 (2009) ............................................................................17

*Brnovich v. Democratic Nat'l Comm.*,
    141 S.Ct. 2321 (2021) ....................................................8, 15, 16, 17

*Brooks v. Ga. State Bd. of Elections*,
    997 F.2d 857 (11th Cir. 1993)..........................................................11

*Cannon v. University of Chicago*,
    441 U.S. 677 (1979) ........................................................................13

*Caster v. Merrill*,
  No. 2:21-CV-1536-AMM, 2022 WL 264819 (N.D. Ala. Jan. 24,
  2022) .................................................................................................. 5

*Chisom v. Roemer*,
  501 U.S. 380 (1991) ....................................................................... 12, 17

*City of Mobile v. Bolden*,
  446 U.S. 55 (1980) ............................................................................. 16

*Clark v. Calhoun Cty., Miss.*,
  88 F.3d 1393 (5th Cir. 1996) ............................................................. 18

*Dillard v. Baldwin Cty. Comm'rs*,
  376 F.3d 1260 (11th Cir. 2004) ......................................................... 17

*Dillard v. City of Greensboro*,
  213 F.3d 1347 (11th Cir. 2000) .................................................... 10, 11

*Fils v. City of Aventura*,
  647 F. 3d 1272 (11th Cir. 2011) .......................................................... 3

*Ford v. Strange*,
  580 F. App'x 701 (11th Cir. 2014) ...................................................... 5

*Ga. State Conf. NAACP v. State*,
  269 F. Supp. 3d 1266 (N.D. Ga. 2017) ............................................ 5, 8

*Gonzaga Univ. v. Doe*,
  536 U.S. 273 (2002) ............................................................................. 6

*Grant v. Raffensperger*,
  No. 1:22-cv-00122-SCJ, 2022 WL 1516321 (N.D. Ga. Jan. 28,
  2022) .................................................................................................. 2

*Growe v. Emison*,
  507 U.S. 25 (1993) ............................................................................. 17

*Hall v. Virginia*,
  385 F.3d 421 (4th Cir. 2004) ............................................................. 18

*Holder v. Hall*,
  512 U.S. 874 (1994) ........................................................................17

*Houston Lawyers' Ass'n v. Attorney General of Tex.*,
  501 U.S. 419 (1991) ........................................................................17

*Jenkins v. Red Clay Consol. Sch. Dist. Bd. of Educ.*,
  4 F.3d 1103 (3d Cir. 1993) ..............................................................18

*Johnson v. De Grandy*,
  512 U.S. 997, 114 S. Ct. 2647, 129 L.Ed.2d 775 (1994) ..................17

*Johnson v. Governor of State of Fla.*,
  405 F. 3d 1214 (11th Cir. 2005) .........................................................8

*King v. Burwell*,
  576 U.S. 473 (2015) ..........................................................................7

*Kingman Park Civic Ass'n v. Williams*,
  348 F.3d 1033 (D.C. Cir. 2003) ......................................................18

*League of United Latin Am. Citizens v. Abbott*,
  No. 3:21-cv-259 (DCG-JES-JVB), (W.D. Tex. Nov. 30, 2021) .....10

*League of United Latin Am. Citizens v. Abbott*,
  No. EP-21-CV-00259-DCG-JES-JVB, 2021 WL 5762035 (W.D.
  Tex. Dec. 3, 2021) ..................................................................1, 5, 7

*League of United Latin Am. Citizens v. Perry*,
  548 U.S. 399 (2006) ........................................................................17

*Liu v. SEC*,
  140 S. Ct. 1936 (2020) ....................................................................19

*Luft v. Evers*,
  963 F.3d 665 (7th Cir. 2020)............................................................18

*Maloney v. City of Marietta*,
  822 F.2d 1023 (11th Cir. 1987).........................................................9

*Metts v. Murphy*,
  363 F.3d 8 (1st Cir. 2004) ...............................................................18

*Mixon v. Ohio*,
  193 F.3d 389 (6th Cir. 1999)..............................................................5

*Morse v. Republican Party*,
  517 U.S. 186 (1996) ...........................................................*passim*

*Ne. Ohio Coal. Homeless v. Husted*,
  837 F.3d 612 (6th Cir. 2016)............................................................18

*Northwest Airlines, Inc. v. Transport Workers*,
  451 U.S. 77 (1981) .........................................................................13

*OCA-Greater Hous. v. Texas*,
  867 F.3d 604 (5th Cir. 2017).............................................................5

*Perry-Bey v. City of Norfolk*,
  678 F. Supp. 2d 348 (E.D. Va. 2009) ................................................6

*Roberts v. Wamser*,
  883 F.2d 617 (1989)................................................................8, 9, 18

*Sanchez v. State of Colo.*,
  97 F.3d 1303 (10th Cir. 1996)..........................................................18

*Schwier v. Cox*,
  340 F.3d 1284 (11th Cir. 2003).........................................................14

*Shelby Cty., Ala. v. Holder*,
  570 U.S. 529 (2013) ....................................................................2, 12

*Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*,
  476 U.S. 409 (1986) .........................................................................19

*Tcherepnin v. Knight*,
  389 U.S. 332 (1967) .........................................................................12

*Veasey v. Perry*,
  29 F. Supp. 3d 896 (S.D. Tex. 2014) .................................................6

*Voinovich v. Quilter*,
  507 U.S. 146 (1993) .........................................................................17

*White v. State of Ala.*,
    74 F.3d 1058 (11th Cir. 1996)................................................................17

*Wisniewski v. Rodale, Inc.*,
    510 F.3d 294 (3d Cir. 2007).................................................................7

*Wright v. Sumter Cty. Bd. Of Elections & Registration*,
    979 F.3d 1282 (11th Cir. 2020)..........................................................18

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) .........................................................................3

**Statutes**

52 U.S.C.A. § 10310(e).......................................................................9, 10

42 U.S.C. §§ 1973a, 1973d ....................................................................14

42 U.S.C. § 2000d (Title VI of the Civil Rights Act) ..........................6, 7

52 U.S.C. 10308(e-f) ...............................................................................10

52 U.S.C. § 10101, *et seq.*......................................................................11

52 U.S.C. § 10301(a)..............................................................................6, 7

52 U.S.C. § 10302 ......................................................................................7

52 U.S.C. § 10302(a)..................................................................................8

**Other Authorities**

Fourteenth Amendment...............................................................................9

Fifteenth Amendment..................................................................................8

Armand Derfner, *Racial Discrimination and the Right to Vote*, 26
    Vand. L. Rev. 523, 524, 550 (1973)....................................................11

*Cases Database*, University of Michigan Law School Voting Rights
    Initiative (2022), https://voting.law.umich.edu/database ..................18

H.R. Rep. No. 91-397 (1969) ...................................................................14

H.R. Rep. No. 97-227 (1981) ..................................................................15

H.R. Rep. No. 109-478 (2006) ...............................................................16

S. Rep. No. 94-295 (1975) ...............................................................14, 15

S. Rep. No. 97-417 (1982) .................................................................9, 15

**INTRODUCTION**

In the fifty-seven years since the passage of the Voting Rights Act ("VRA"), hundreds of courts around the country—including the United States Supreme Court and this Court—have presided over Section 2 cases brought by private litigants with scarcely a whisper that there was no private right of action. The handful of defendants who raised the issue—virtually all very recently—were unanimously met with resounding rejections. Indeed, most recently, when the issue was raised in a redistricting case similar to that at bar, a three-judge panel in the Fifth Circuit quickly dispatched the defendants' argument. *See League of United Latin Am. Citizens v. Abbott*, No. EP-21-CV-00259-DCG-JES-JVB, 2021 WL 5762035, at *1 (W.D. Tex. Dec. 3, 2021) ("*LULAC*").

That result is not surprising. Common sense dictates that, if the text and structure of the Voting Rights Act of 1965 even hinted at the notion that private litigants had no right to file an action under Section 2, surely every one of the many hundreds of defendants who had been sued by private plaintiffs under Section 2 in the last six decades and who had fought tooth and nail against liability would have at least attempted to make that argument. Until very recently, that hardly ever happened. Nor—until very recently—had any court raised the issue on its own accord, an omission even more telling because the district court's decision upon which Defendants' motion wholly relies purports to raise a question of subject-

1

matter jurisdiction. *See Ark. State Conf. NAACP v. Ark. Bd. Apportionment*, 2022 WL 496908, at *9 (E.D. Ark. Feb. 17, 2022) ("*Ark NAACP*"). Indeed, in holding unconstitutional a companion provision of the Voting Rights Act, the Supreme Court expressly recognized suits under Section 2 by "individuals" and the availability of injunctive relief in such suits "to block voting laws from going into effect." *Shelby Cty., Ala. v. Holder*, 570 U.S. 529, 537 (2013). Surely, at least one eminent jurist would have thought of this supposed threshold issue at some moment in over a half century. The silence of this multitude of defendants and judges is deafening.

As this Court has already recognized, "there is no reason to ignore or refute the decades of Section 2 litigation challenging redistricting plans in which courts (including the Supreme Court) have never denied a private plaintiff the ability to bring a Section 2 claim." *Grant v. Raffensperger,* No. 1:22-cv-00122-SCJ, 2022 WL 1516321, at *10 (N.D. Ga. Jan. 28, 2022). The text and structure of the statute clearly support the congressional intent, expressly stated in the legislative history, to create rights and remedies for private persons to sue under the provision. To rule otherwise, in the face of the history of this most important of laws designed to ensure equal opportunity of all to participate in our democracy, is an unprecedented act of judicial incursion into the legislative sphere.

**ARGUMENT**

**I.     Congress Intended a Private Right of Action for Section 2 Enforcement.**

Defendants argue that because a private right of action is not explicitly written into the statute, courts can no longer recognize the right of private plaintiffs to bring claims under Section 2. *See* Mot. at 2 (citing *Ark NAACP*).[1] That is simply not the law. First, and dispositive on the issue, the matter has already been resolved contrary to Defendants' and the *Ark NAACP* court's position by the Supreme Court in *Morse v. Republican Party*, 517 U.S. 186, 233 (1996). Second, even were this Court inclined to revisit the issue, the absence of language expressly creating a private right of action is in no way dispositive of the issue. Rather, as Defendants recognize (Mot. at 2), Supreme Court precedent provides for a private right of action to challenge statutes that "'***displa[y] an intent***' to create 'a private remedy.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001)) (emphasis added).

---

[1] Defendants refer this Court to the *Ark NAACP* Order for a "thorough analysis" which "need not be exhaustively repeated here." Mot. at 7. In this Opposition, Plaintiffs do not respond to the entire 41-page order in that case but, rather, respond primarily to arguments made by Defendants in their Opposition. Any argument not actually raised by Defendants in their Motion is waived. *See Fils v. City of Aventura,* 647 F. 3d 1272, 1284 (11th Cir. 2011) ("To prevail on a particular theory of liability, a party must present that argument to the district court . . . district courts cannot concoct or resurrect arguments neither made nor advanced by the parties.").

*Sandoval* held that a private right of action exists when Congress intended to create a private right and a private remedy. 532 U.S. at 286. In ascertaining that intent, *Sandoval* instructs that courts look to the text of the statute, its structure, and its legal context. *Id.* at 288. Here, every indicia points in the direction of the creation of a private right of action to enforce Section 2 of the VRA, and none points in the opposite direction.

### A.    The Issue Was Resolved Against Defendants in *Morse v. Republican Party*.

In the plurality opinion in *Morse v. Republican Party*, Justice Stevens wrote: "Although § 2, like § 5, provides no right to sue on its face, 'the existence of the private right of action under Section 2 . . . has been clearly intended by Congress since 1965.'" 517 U.S. 186, 232 (1996) (Stevens, J., joined by Ginsburg, J.) (quoting S. Rep. No. 97-417, at 30 (1982) and referencing H.R. Rep. No. 97-227, at 32 (1981)). Three other Justices, writing separately, expressly agreed with this proposition. *Id.* at 240 (joint opinion of Breyer, O'Connor, and Souter, JJ.) ("I believe Congress intended to establish a private right of action to enforce § 10, no less than it did to enforce §§ 2 and 5.").

In the handful of times that the issue has been raised, every federal court—except the court in *Ark NAACP*—considered the issue settled by the five Justices in *Morse*. The Eleventh Circuit has expressly treated the combination of opinions in

*Morse* as having resolved the issue. *See Ford v. Strange*, 580 F. App'x 701, 705 n.6 (11th Cir. 2014) (per curiam) (discussing *Morse,* concluding that "[a] majority of the Supreme Court has indicated that section 2 of the Voting Rights Act contains an implied private right of action"); *see also Ala. State Conf. NAACP v. Alabama,* 949 F. 3d 647, 651–54 (11th Cir. 2020) ("The [Voting Rights Act], as amended, clearly expresses an intent to allow private parties to sue the States."), *vacated on unrelated grounds,* 141 S. Ct. 2618 (2021); *see also Caster v. Merrill*, No. 2:21-CV-1536-AMM, 2022 WL 264819, at *81 (N.D. Ala. Jan. 24, 2022), *cert. granted before judgment sub nom. Merrill v. Milligan*, 142 S. Ct. 879 (2022) ("[T]he understanding that Section Two provides a private right of action was necessary to reach the judgment [in *Morse*] that Section Ten provides a private right of action. Five justices concurred in that reasoning and judgment. A ruling that Section Two does not provide a private right of action would badly undermine the rationale offered by the Court in *Morse.*"); *Ga. State Conf. NAACP v. State*, 269 F. Supp. 3d 1266, 1275 (N.D. Ga. 2017) ("*Georgia NAACP*") (recognizing "that Section 2 contains an implied private right of action") (citing *Morse*, 517 U.S. at 232).[2] The conclusion by

---

[2] *See also OCA-Greater Hous. v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017) (affirming Section 2 ruling filed by a private plaintiff); *Mixon v. Ohio*, 193 F.3d 389, 406 (6th Cir. 1999) ("An individual may bring a private cause of action under Section 2 of the Voting Rights Act"); *Alpha Phi Alpha Fraternity, Inc. v. Raffensperger,* No. 1:21-cv-5337-SCJ, 2022 WL 633312, at *11 n.10 (N.D. Ga. Feb. 28, 2022) (specifically rejecting ruling in *Ark NAACP*); *LULAC*, 2021 WL

the majority of the Court in *Morse* that Congress intended to create a private right of action to enforce Section 2 of the VRA controls disposition of Defendants' motion. There is, therefore, no need for this Court to venture beyond it.

**B.      The Language and Structure of the VRA Indicate Congressional Intent to Create a Private Right of Action.**

Even if this Court were inclined to undertake its own examination of the issue, the result would necessarily be the same as that reached by the majority of the Court in *Morse*. The majority's decision in *Morse* is completely consistent with the Supreme Court's approach to resolving such issues as set forth in *Sandoval* and its progeny.

The main criterion for whether a statute contains rights-creating language, as referenced in *Sandoval*, 532 U.S. at 288, is whether it explicitly refers to a citizen's "right[]" and is "phrased in terms of the persons benefited." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002). Section 2 contains this language by expressly protecting the "right of any citizen . . . to vote" free from racial discrimination. 52 U.S.C. § 10301(a). Indeed, a court recently held that the language of 42 U.S.C. § 2000d (Title VI of the Civil Rights Act), which *Sandoval* held contained "paradigmatic

---

5762035, at *1; *Veasey v. Perry*, 29 F. Supp. 3d 896, 905–07 (S.D. Tex. 2014) (describing long history of private enforcement of Section 2); *Perry-Bey v. City of Norfolk*, 678 F. Supp. 2d 348, 362 (E.D. Va. 2009) (ruling that Section 2 can be enforced by private parties).

rights-creating language," "seems to mirror Section 2's" language. *LULAC*, 2021 WL 5762035, at *1.[3] Therefore, the Court held, Section 2 contains rights-creating language. *Id.*; *see also Wisniewski v. Rodale, Inc*., 510 F.3d 294, 302 (3d Cir. 2007) ("With an explicit reference to a right and a focus on the individual protected, this language suffices to demonstrate Congress's intent to create a personal right[.]").

The VRA also meets *Sandoval*'s second criterion: whether the statute provides for "a private remedy." *See* 532 U.S. at 286–88. In analyzing this issue, courts "must read the words" in a statute "in their context and with a view to their place in the overall statutory scheme" because the court's "duty, after all, is to construe statutes, not isolated provisions." *King v. Burwell,* 576 U.S. 473–75, 486 (2015) (internal quotations marks omitted). As the Court instructed in *Sandoval*, in ascertaining intent, courts must review not only the text of a statute, but also its "structure." 532 U.S. at 288. The overall structure of the VRA unequivocally supports congressional intent to create a private remedy.

Section 3 of the VRA, "Proceeding to enforce the right to vote," 52 U.S.C. § 10302, expressly anticipates private remedies for Section 2 violations. It provides for relief in "proceeding[s]" brought by "the Attorney General *or an aggrieved*

---

[3] *Compare* 42 U.S.C. § 2000d ("No person . . . shall . . . be subjected to discrimination[.]") *with* 52 U.S.C. § 10301(a) ("No voting qualification . . . shall be imposed . . . in a manner which [denies] . . . the right of any citizen . . . to vote on account of race or color[.]").

*person* . . . under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10302(a) (emphasis added); *see also id*. § 10302(b) (same), *id*. § 10302(c) (same). Clearly, under Section 2 of the VRA, private plaintiffs are "aggrieved person[s]" when their voting rights have been violated. *See Roberts v. Wamser*, 883 F.2d 617, 621, 624 (1989) (Section 3 "reflects[s] the standing of 'aggrieved persons' to enforce their right to vote," and it includes "persons whose voting rights have been denied or impaired."); *see also Morse*, 517 U.S. at 233 (Congress' reference to "*or an aggrieved person*" in Section 3 was intended "to provide the same remedies to private parties as had formerly been available to the Attorney General alone.").

Further, a Section 2 suit is "a proceeding" brought under a statute "to enforce the voting guarantees of the fourteenth or fifteenth amendment." *Morse,* 517 U.S. at 233–34 (Section 2 is "designed" to enforce the fourteenth and fifteenth amendments); *accord Brnovich v. Democratic Nat'l Comm.,* 141 S.Ct. 2321, 2330 (2021) (purpose of VRA to end voting discrimination as prescribed by fifteenth amendment); *Johnson v. Governor of State of Fla.,* 405 F. 3d 1214, 1227 (11th Cir. 2005) (VRA was enacted "pursuant to [Congress'] enforcement powers under the Fourteenth and Fifteenth Amendments."); *see also Georgia NAACP*, 269 F. Supp. 3d at 1275 ("[T]he Supreme Court has noted that the Voting Rights Act was 'designed to implement the Fifteenth Amendment and, in some respects,

the Fourteenth Amendment.'"); S. Rep. No. 97-417, at 9 ("In adopting [an] amendment [to Section 2], Congress indicated that the basis for this expanded Section 2 was not only the Fifteenth Amendment, but also the Fourteenth as well.").

In this context, the courts—other than the court in *Ark NAACP*—have unanimously ruled that Section 3 provides private remedies for Section 2 violations. *See, e.g.*, *Ala. State Conf. NAACP*, 949 F.3d at 652 ("The language of § 2 and § 3, read together, imposes direct liability on States for discrimination in voting and explicitly provides remedies to private parties to address violations under the statute."); *Wamser,* 883 F. 2d at 621, 621 n.6 (Section 3 provides private remedies for Section 2).

Similarly, Section 12 of the VRA allows that "[i]n any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment," a court may "allow the prevailing party, other than the United States, a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs." 52 U.S.C.A. § 10310(e); s*ee also Maloney v. City of Marietta,* 822 F.2d 1023, 1026 (11th Cir. 1987) ("purpose of [VRA § 12] is to encourage private litigants to act as private attorneys general in seeking to vindicate the civil rights laws") (internal

quotation marks omitted). Therefore, the text of the VRA explicitly provides that plaintiffs other than the United States may bring lawsuits to enforce the Act.[4]

Section 14(e) of the VRA is further evidence that the overall structure of the VRA indicates congressional intent to create private remedies for Section 2 violations. That provision authorizes "the prevailing party, *other than the United States*" to seek attorney's fees "[i]n any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10310(e) (emphasis added). By its express terms then, Section 14(e) brings private litigants into the VRA's fee-shifting structure – a structure designed to provide prevailing parties in a VRA action with fees and costs. Our courts have agreed. *See, e.g.*, *Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir. 2000) ("This circuit has implicitly construed a violation of § 5 of the [VRA] to be a violation of the

---

[4] The district court in *Ark NAACP* rejected Section 12(f) as evincing congressional intent to create a private right of action to enforce Section 2 of the VRA on the basis that Section 12(f) followed Section 12(e), and Section 12(e) spoke in terms only of the Attorney General's authority to undertake certain actions based on complaints received from observers. *See Ark NAACP*, 2022 WL 496908, at *12–13; 52 U.S.C. 10308(e-f). Contrary to the district court's reasoning, nothing in Section 12(f) limits its application to the observer provisions of the Act or to any sole responsibility or authority of the Attorney General. The Department of Justice itself agrees that Section 2 creates a private remedy for any "aggrieved person," not merely for the federal government. *See* Statement of Interest of the United States, *League of United Latin Am. Citizens v. Abbott*, No. 3:21-cv-259 (DCG-JES-JVB), (W.D. Tex. Nov. 30, 2021).

'guarantees of the fourteenth or fifteenth amendment,' and no one argues here that the same implicit extension of [Section 14(e)] would not embrace § 2 claims, as well") (internal citation omitted); *Brooks v. Ga. State Bd. of Elections*, 997 F.2d 857, 86-–61 (11th Cir. 1993) (concluding Section 14(e) provides attorney's fees "to enforce civil rights statutes, including the voting rights statutes"); *Morse*, 517 U.S. at 289 ("Section 14(e), which provides for attorney's fees to 'the prevailing party, other than the United States,' is likewise a general reference to private rights of action.") (Thomas, J., dissenting). Consequently, federal courts routinely award attorneys' fees to private plaintiffs who successfully litigated Section 2 claims under this Section 14(e). *See, e.g.*, *Dillard*, 213 F.3d at 1353.

Few statutes in this Nation's history have possessed a more important remedial purpose than the Voting Rights Act of 1965. 52 U.S.C. § 10101, *et seq*. Responding to the states' tenacious "ability . . . to stay one step ahead of federal law," Congress passed the Act to provide a "new weapon[] against discrimination." Armand Derfner, *Racial Discrimination and the Right to Vote*, 26 Vand. L. Rev. 523, 524, 550 (1973). As the Supreme Court recently described the legal context of the Act:

> Inspired to action by the civil rights movement, Congress responded in 1965 with the Voting Rights Act. Section 2 was enacted to forbid, in all 50 States, any 'standard, practice, or procedure ... imposed or applied ... to deny or abridge the right of any citizen of the United States to vote

11

on account of race or color.' 79 Stat. 437. The current version forbids any "'standard, practice, or procedure' that "results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." 42 U.S.C. § 1973(a). Both the Federal Government and individuals have sued to enforce § 2, *see, e.g.*, *Johnson v. De Grandy,* 512 U.S. 997, 114 S. Ct. 2647, 129 L.Ed.2d 775 (1994), and injunctive relief is available in appropriate cases to block voting laws from going into effect, see 42 U.S.C. § 1973j(d).

*Shelby Cty.*, 570 U.S. at 536-37.

A statute with so important a remedial purpose should not be strictly construed, *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967) (noting "we are guided by the familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes"), and the Supreme Court has specifically directed that Section 2 "should be interpreted in a manner that provides the broadest possible scope in combating racial discrimination." *Chisom v. Roemer*, 501 U.S. 380, 401 (1991) (internal quotation marks omitted).

Plaintiffs emphasize that they are *not* suggesting that, because remedial statutes must be broadly construed, that in itself necessitates implying a private right of action to enforce Section 2 of the Act. Rather, if the court chooses to parse the statute to ascertain whether Congress intended to create a private remedy – as the district court in *Ark NAACP* did – it must approach that task with the perspective of a broad construction, not the myopic one exhibited by that court.

12

**C.    The Legislative History Confirms Congressional Intent to Create a Private Right of Action to Enforce Section 2 of the VRA.**

Although the district court in *Ark NAACP* declined to consider legislative history, *Sandoval* and the precedent upon which *Sandoval* was based instructs otherwise. The Court in *Sandoval* counseled against giving dispositive weight to "context shorn of text," 532 U.S. at 288, and recognized that legislative history matters when it "clarifies text." *Id*. Indeed, in explaining that the *Sandoval* guidelines for ascertaining congressional intent to create a private right of action were "not novel, but well established in earlier decisions," 532 U.S. at 288 n.7, Justice Scalia cited to *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 94 n. 31 (1981), which in turn explained that where "*neither* the statute nor the legislative history reveals a congressional intent to create a private right of action for the benefit of the plaintiff," the inquiry into congressional intent may end. (Emphasis added). Throughout *Sandoval*, 532 U.S. at 279, 280, 282, 288, 290, the Court relied heavily on its prior decision in *Cannon v. University of Chicago*, 441 U.S. 677 (1979), which looked to both the language of the statute *and* its legislative history in ascertaining congressional intent to create a private right of action.

The legislative history of the VRA could not be clearer on the issue. When Congress first reauthorized the VRA in 1970, it favorably cited *Allen v. State Bd. of Elections*, 393 U.S. 544 (1969) for the proposition that Section 5 contained a private

right of action. H.R. Rep. No. 91-397, at 8 (1969). In 1975,[5] Congress amended the

Act to insert protections for language minorities, among other things, and expand

the constitutional underpinnings of the Act by referencing the guarantees of the

Fourteenth Amendment. *See* S. Rep. No. 94-295, at 22–24 (1975); 42 U.S.C.

§§ 1973a, 1973d. The 1975 Senate Report accompanying these amendments stated

in no uncertain terms:

> In enacting remedial legislation, Congress has regularly established a dual enforcement mechanism. It has, on the one hand, given enforcement responsibility to a governmental agency, and on the other, has also **provided remedies to private persons acting as a class or on their own behalf. The Committee concludes that it is sound policy to authorize private remedies to assist the process of enforcing voting rights.**

S. Rep. No. 94-295, at 22–24 at 40 (emphasis added). The same Report made it clear

that Section 14(e), the provision described above relating to attorneys' fee awards,

applies to "suits to enforce the voting guarantees of the Fourteenth and Fifteenth

---

[5] In *Allen*, the Supreme Court expressed its belief that a private right of action exists to enforce Section 5 of the VRA, when it held that the broad purpose of the VRA would be "severely hampered" by the inability of private citizens to "depend solely on litigation instituted at the discretion of the Attorney General." 393 U.S. at 556; *see also id.* at 55-56 (limiting the ability of private individuals to bring suit under the VRA would contradict Congress's intent to "make the guarantees of the Fifteenth Amendment finally a reality for all citizens"). *Allen* is still good law today. *See e.g.*, *Schwier v. Cox*, 340 F.3d 1284, 1294–95 (11th Cir. 2003) (relying on *Allen* to support the holding that the VRA provides a private right of action).

amendments, and statutes enacted under those amendments," S. Rep. No. 94-295, at 40 (emphasis added).

In 1982, Congress again amended Section 2, this time to create a discriminatory results cause of action, in addition to a discriminatory intent cause of action. Accompanying the 1982 amendments was a 245-page 1982 Senate Committee Report, S. Rep. No. 97-417 (1982), which became "the authoritative source for legislative intent" of the VRA. *Gingles,* 478 U.S. at 43 n.7; *see also Brnovich*, 141 S. Ct. at 2332–33 (describing the 1982 Senate Report as "oft-cited" by the Supreme Court when interpreting the VRA.).

The Senate Report was unequivocal in its acknowledgement of the existence of a private right of action to enforce Section 2. S. Rep. No. 97-417, at 5  ("The Committee reiterates the existence of the private right of action under Section 2, as has been clearly intended by Congress since 1965. *See Allen v. Board of Elections*, 393 U.S. 544 (1969)."). The accompanying House Report was no less certain on the issue. H. Rep. No. 97-227, at 32 (1981) ("It is intended that citizens have a private cause of action to enforce their rights under Section 2. This is not intended to be an exclusive remedy for voting rights violations, since such violations may also be challenged by citizens under 42 U.S.C. §§ 1971, 1983 and other voting rights statutes"). As did the Senate Report, the House Report underscored that private plaintiffs were entitled to attorneys' fees if they prevail. *Id.*

15

These express statements of recognition of a private right of action to enforce Section 2 of the VRA are further bolstered by the context of the 1982 amendments, which constituted Congress' response to the Supreme Court's decision in *City of Mobile v. Bolden*, 446 U.S. 55, 62 (1980) that Section 2 prohibited only voting laws motivated by a discriminatory purpose. Congress adopted the 1982 amendments to relieve plaintiffs of the burden of proving discriminatory intent as part of a Section 2 action. *See Brnovich*, 141 S. Ct. at 2332. It would strain credulity for Congress to excise the private right of action while trying to make it easier for private plaintiffs to challenge racial discrimination in voting.

Congress maintained the same view when the Act was reauthorized in 2006. H. Rep. No. 109-478, at 11 (2006). In fact, Congress in 2006 reiterated its approval of litigation by both "the Department of Justice and private citizens" to enforce Section 5, which it stated "played a critical role" in ensuring VRA compliance. *Id.* at 41–42. It further observed that "much of the burden of enforcing Section 5 over the years has fallen to private citizens whose assistance has been critical to ensuring that discriminatory changes are stopped before they negatively affect minority voters," *id.,* and that "Section 2 has been instrumental in paving the way for minority voters to more fully participate in the political process across the country." *Id.* at 11.

Rather than consider this clear evidence of congressional intent to create a private right of action, the district court in *Ark NAACP* closed its eyes to it. Acting

16

more like the courts whose prior decisions the district court criticized as judicial legislating, that court itself assumed the role of legislator, and wrote a private right of action—clearly intended by Congress—out of the Act. This was improper, and the decision in *Ark NAACP* is entitled to no deference.

### D.   Congress Must Be Presumed To Have Been Aware of the Application of the Private Right of Action.

For decades, many courts, including the Supreme Court, have heard hundreds of VRA Section 2 cases brought by private plaintiffs. These include not only *Morse*, but also Supreme Court opinions such as *Abbott v. Perez,* 138 S. Ct. 2305, 2317(2018), *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 409 (2006); *De Grandy,* 512 U.S. at 1000; *Roemer,* 501 U.S. at 384; and *Gingles,* 478 U.S. at 38.[6] It includes cases before the Eleventh Circuit such as *White v. State of Ala.*, 74 F.3d 1058, 1060 (11th Cir. 1996), *Dillard v. Baldwin Cty. Comm'rs*, 376 F.3d 1260, 1265 (11th Cir. 2004) (stating that "section 2 provides a cause of action for protected minority groups that can establish, based on the totality of circumstances, 'that [their] members have less opportunity than other members of the electorate to

---

[6] The Supreme Court alone has heard at least eleven Section 2 cases since 1982 brought by private plaintiffs. In addition to those cited above, *see, e.g.*, *Brnovich,* 141 S. Ct. 2321; *Bartlett v. Strickland*, 556 U.S. 1 (2009); *Holder v. Hall*, 512 U.S. 874 (1994); *Growe v. Emison*, 507 U.S. 25 (1993); *Voinovich v. Quilter*, 507 U.S. 146 (1993); *Houston Lawyers' Ass'n v. Attorney General of Tex*., 501 U.S. 419 (1991).

participate in the political process and to elect representatives of their choice'"), and *Wright v. Sumter Cty. Bd. Of Elections & Registration*, 979 F.3d 1282, 1311 (11th Cir. 2020) (affirming the district court's determination that the districting map violated section 2 of the VRA in a lawsuit brought by private plaintiffs). Every federal appeals court, with the exception of the Federal Circuit, has heard Section 2 cases brought by private plaintiffs.[7] At least 75 Section 2 cases have been filed by private plaintiffs in district courts within the Eleventh Circuit alone.[8] In none of these cases has a court ever ruled that the private plaintiffs could not bring an action under Section 2. To the contrary, as noted above, every court to have considered the issue—again, with the sole exception of the court in *Ark NAACP*— has rejected the notion raised in Defendants' motion the few times a party has had the temerity to raise it.

---

[7] *See, e.g.*, *Luft v. Evers*, 963 F.3d 665 (7th Cir. 2020); *Ne. Ohio Coal. Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016); *Arbor Hill Concerned Citizens v. Cty. of Albany*, 357 F.3d 260 (2d Cir. 2004); *Hall v. Virginia*, 385 F.3d 421 (4th Cir. 2004); *Metts v. Murphy*, 363 F.3d 8, 11 (1st Cir. 2004); *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033 (D.C. Cir. 2003); *Arakaki v. Hawaii*, 314 F.3d 1091 (9th Cir. 2002); *Sanchez v. State of Colo.*, 97 F.3d 1303 (10th Cir. 1996); *Clark v. Calhoun Cty., Miss.*, 88 F.3d 1393 (5th Cir. 1996); *Jenkins v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 4 F.3d 1103 (3d Cir. 1993); *Wamser*, 883 F.2d at 621, 624.
[8] *See generally* Ellen D. Katz et al., *Section 2 Cases Database*, University of Michigan Law School Voting Rights Initiative (2022), https://voting.law.umich.edu/database.

Congress is presumed "to have been aware of the scope of [the statute] as interpreted by lower courts," *Liu v. SEC*, 140 S. Ct. 1936, 1947 (2020), and its failure to change the statute in the face of such overwhelming judicial precedent evidences its agreement with the courts' consistent reading of Section 2 as providing for a private right of action. *See Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 419 (1986) (leaving statute without change in face of judicial opinion evidences congressional intent).

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Motion to Dismiss be DENIED.

Dated: June 3, 2022                    Respectfully submitted,

By:   */s/ Kurt Kastorf*
**Georgia Bar No. 315315**
**KASTORF LAW LLP**
1387 Iverson St., Suite 100
Atlanta, GA 30307
(404) 900-0030
kurt@kastorflaw.com

19

Jon Greenbaum (*pro hac vice*)
Ezra D. Rosenberg (*pro hac vice*)
Julie M. Houk (*pro hac vice*)
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
jhouk@lawyerscommittee.org
**LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW**
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

Toni Michelle Jackson (*pro hac vice*)
Astor H.L. Heaven (*pro hac vice*)
Keith Harrison (*pro hac vice*)
tjackson@crowell.com
aheaven@crowell.com
kharrison@crowell.com
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone: (202) 624-2500

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1**

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

*/s/ Kurt Kastorf*
Kurt Kastorf

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day caused to be served the foregoing Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel or parties of record on the service list.

This 3rd day of June, 2022

/s/ Kurt Kastorf
Kurt Kastorf