IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEORGIA STATE CONFERENCE OF THE NAACP, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> STATE OF GEORGIA, *et al.*, <br><br> *Defendants*. | CIVIL ACTION <br><br> FILE NO. 1:21-CV-05338-SCJ-SDG-ELB |

### REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss [Doc. 66] ("Response") essentially asks this Court to find a private right of action for their Section 2 claims because "that's the way it's always been done." And while *stare decisis* is a bedrock principle of American law, decisions that merely assume without deciding—or that touch on issues only in non-precedential dicta—are not binding on any court, including this one. That is why, in combination with recent Supreme Court language casting doubt on long-held assumptions regarding enforceability of Section 2, Defendants requested this Court take "a fresh look" at the statute and answer the question head on as another district court recently did. [Doc. 63-1,

p. 5[1]] quoting *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2326 (2021). Plaintiffs' response to this invitation was to lean heavily on legal fictions and empty caselaw in an effort to divert a searching inquiry into the inherent textual flaws in their Section 2 claim. But appeals to legislative history and the faulty assumptions of higher courts that ultimately conflict with the text cannot help Plaintiffs. Their Section 2 claim should be dismissed because it is enforceable only by the Attorney General of the United States.

## ARGUMENT AND CITATION TO AUTHORITY

Plaintiffs' Response does not begin with the text of Section 2, 52 U.S.C. § 10301(a)–(b), because it cannot—the text offers no support for their arguments. Instead, they begin by highlighting the purported "intent" of Congress in passing the Voting Rights Act ("VRA") and its subsequent amendments.

Plaintiffs attempt to divine this intent first by looking at the plurality opinion in *Morse v. Republican Party*, 517 U.S. 186 (1996), to put the weight of the Supreme Court behind their interpretation of Section 2. Then Plaintiffs look to the "language and structure" of the VRA as a whole, hoping to find a

---

[1] All citations to filed documents are to the blue ECF page numbers at the top of each page.

private right of action by reading other provisions of the Act. Plaintiffs then seek refuge in the legislative history of the VRA, making the familiar offering of committee reports and testimony as evidence that, although there is no private right of action in the text of Section 2, it was clearly contemplated by Congress. And finally, Plaintiffs offer the hollow argument that Congress ratified a private right of action by not explicitly removing it in its amendments. These arguments fail when faced with the reality that one cannot square the text of Section 2 with the claim that it offers plaintiffs a private right of action.

### I. *Morse* does not create binding precedent on whether a private right of action exists for Section 2.

Plaintiffs confidently assert that the Supreme Court has considered and decided the question of private enforcement of Section 2 of the VRA in the case of *Morse*, 517 U.S. at 186. [Doc. 66, pp. 12-14]. In support of this position, they cite part of Justice Stevens' plurality opinion for the proposition that "the private right of action under Section 2 … has been clearly intended by Congress since 1965." [Doc. 66, p. 12] quoting *Morse,* 517 U.S. at 240 (Stevens, J., joined by Ginsburg, J.). But *Morse* was a divided 2-3-4 decision that involved the private enforceability of *Section 10* of the VRA, not Section 2. Any reference to the private enforceability of Section 2 was

3

merely dicta and was not necessary to Justice Stevens' holding. Accordingly, it has no precedential value for purposes of Section 2. "[T]his Court does not decide important questions of law by cursory dicta inserted in unrelated cases." *In re Permian Basin Area Rate Cases,* 390 U.S. 747, 775 (1968); *see also* Bryan A. Garner, et al., *The Law of Judicial Precedent* 46 (2016) ("Generally, a dictum is a statement in a judicial opinion that is unnecessary to the case's resolution.").

Moreover, to the extent dicta in two different non-majority opinions forms what Plaintiffs believe constitutes a majority holding on whether there is a private right of action under Section 2, the opinions are not precisely in alignment in their reasoning. Accordingly, relying on either of them as the Court's "holding" is even more tenuous. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977) (internal quotations omitted). The dicta the Plaintiffs attempt to elevate to precedent contains precious little rationale for an obvious reason—the Supreme Court was not considering Section 2. Thus, any purported agreement among the divided Supreme Court with respect to Section 2 is too broad to constitute the Court's

holding under *Marks*. The Court's holding in *Morse* was, therefore, limited to Section 10 of the VRA.

> **II. The language and structure of the VRA do not evince a scheme that provides a private right of action under Section 2.**

Plaintiffs next turn to the text of the VRA in search for "rights-creating language" in Section 2. They argue that the statute "explicitly refers to a citizen's right and is phrased in terms of the persons benefited." [Doc. 66, p. 14] (quotations omitted). And Plaintiffs believe they found such rights-creating language in the portion of Section 2 that refers to the "right of any citizen… to vote…" *Id.* But subsection (b), which was added by the 1982 amendments, explains that the right conferred by subsection (a) is not *individual,* but group-based. That is, a violation of such right can only be established when the voting process is "not equally open to participation by *members of a class of citizens* protected by subsection (a) in that *its members* have less opportunity than other members of the electorate to participate in the political process…" 52 U.S.C. § 10301(b) (emphasis added).

This language turns Plaintiffs' "individual rights-creating" allegation on its head. Because contrary to what Plaintiffs suggest, Section 2 expressly limits relief to a group of "members of a class," not individuals. Indeed, an individual can *never* prove a Section 2 violation in isolation because a breach

5

of Section 2 can only be shown where a *class of citizens* cannot elect its preferred candidate of choice or the election system is not equally open to those citizens. If one member of that class were to merely allege that he or she cannot elect their preferred candidate, there would clearly be no cause of action for that person even under Plaintiffs' theory. Instead, an aggrieved member of the group would need to be alleged that the right to vote of the minority *group* is hindered. As explained by the Supreme Court in *Gingles*, Section 2 claims fail unless minority *groups* "experience substantial difficulty electing representatives of their choice." *Thornburg v. Gingles,* 478 U.S. 30, 48 n.15 (1986). Given the nature of Section 2 claims, it is clear that Section 2 grants only a group right, not an individual right. And where statutes are "not concerned with whether the needs of any particular person have been satisfied… they cannot give rise to individual rights.*" Gonzaga Univ. v. Doe,* 536 U.S. 273, 288 (2002). The language of Section 2 cuts against Plaintiffs' theory. And provisions elsewhere in the VRA provide no relief.

In their Response, Plaintiffs argue that Section 2, when read in tandem with Sections 3, 12, and 14 "unequivocally supports congressional intent to create a private remedy." [Doc. 66, p. 15]. But Section 3 involves a remedy for an aggrieved person only when those actions are brought "to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. §

6

10302. Similarly, Section 14 provides attorneys' fees for prevailing parties "[i]n any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10310(e). But claims made pursuant to Section 2 are not brought to enforce the guarantees of the Fourteenth or Fifteenth amendments. Rather, they are brought to enforce the provisions of Section 2 of the VRA, which do not mirror the Fourteenth and Fifteenth amendments. To the contrary, Section 2 was amended in 1982 *precisely because* the guarantees of the Fourteenth and Fifteenth amendments were found lacking in the wake of the Supreme Court's decision in *City of Mobile v. Bolden,* 446 U.S. 55 (1980). So, Congress created new guarantees under Section 2 by including the "results" test in its 1982 amendments. Voting Rights Act Amendments of 1982, Pub. L. No. 97-205, sec. 3, 96 Stat. 131 (1982), codified at 52 U.S.C. § 10301. Clearly, Sections 3 and 14 fail to advance the ball for Plaintiffs. And Section 12 is similarly hollow.

Section 12 of the VRA is codified at 52 U.S.C. § 10308 (P.L. 89-110 § 12). That section is "focused entirely on enforcement proceedings instituted by the Attorney General." *Ark. State Conference NAACP v. Arkansas Bd. of Apportionment*, No. 4:21-cv-01239-LPR, ___ F. Supp. 3d ___, 2022 U.S. Dist. LEXIS 29037, at *25 (E.D. Ark. Feb. 17, 2022) ("*Ark. NAACP*"). Despite this

7

language, Plaintiffs suggest Section 12 weighs in favor of an implied private right of action under Section 2. [Doc. 66, pp. 17-18]. In so doing, Plaintiffs apparently conflate Sections 14 and 12 in their Response. *Id.* (where Plaintiffs cite to 52 U.S.C.A. § 10310(e), which are the fee-shifting provisions of Section 14, and *Maloney v. City of Marietta,* in which the portion cited by Plaintiffs deals with Section 14, not Section 12). 822 F. 2d 1023, 1026 (11th Cir. 1987). Nothing in Section 12 bolsters Plaintiffs' case, because Section 12 deals with associated penalties for discrete violations of the VRA and Section 12(f)—which appears to be the provision Plaintiffs focus on based on FN 4 of their Response—is simply a grant of jurisdiction. Such jurisdictional provisions "create[] no cause of action." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 577 (1979).

> **III. The legislative history Plaintiffs cite is unpersuasive and cannot create a private right of action when one is lacking in the text.**

Plaintiffs suggest that Justice Scalia's decision in *Sandoval* confirms the need to look to legislative history in determining whether a private right of action exists. [Doc. 66, p. 21], citing *Alexander v. Sandoval*, 532 U.S. 275 (2001). But the *Sandoval* court was clear that the "interpretive inquiry begins with the text and structure of the statute… and ends once it has become clear that Congress did not provide a cause of action." *Id.* at 288 n.7

8

Indeed, as Justice Scalia later commented, the use of legislative history assumes that "what we are looking for is the intent of the legislature rather than the meaning of the statutory text. That puts things exactly backwards. To be 'a government of law, not of men' is to be governed by what the laws *say*, and not by what the people who drafted the laws intended." Antonin Scalia & Bryan Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 375 (2012) (emphasis original). The portion of the majority opinion in *Sandoval* that Plaintiffs highlight on this point references an earlier Supreme Court case dealing with legislative history, but Plaintiffs miss the point being made in *Sandoval*: when the text and structure of the law at issue are clear, as they are here, that ends the inquiry. Nevertheless, Plaintiffs spend a significant portion of their argument citing committee reports from various amendments to the VRA. And apart from being unpersuasive, these references only make more conspicuous Plaintiffs' lack of citation to Section 2 itself.

Plaintiffs first cite to the 1975 Senate Report, which provided that "[t]he Committee concludes that it is sound policy to authorize private remedies to assist the process of enforcing voting rights." S. Rep. No. 94-295, 22-24 at 40. But that selection says nothing as to whether private individuals may enforce Section 2 of the VRA. At best, it is the Committee explaining its

9

views on the importance of private remedies, not the insertion of one into the as-enacted legislation. Drawing on another Committee report with a bit more meat on its bones, Plaintiffs point to the Senate Report accompanying the 1982 amendments. There, the report "reiterates the existence of the private right of action under Section 2…" [Doc. 66, p. 24], quoting S. Rep. No. 97-417, at 5. Plaintiffs also note the House Report, which similarly provides that "[i]t is intended that citizens have a private cause of action to enforce their rights under Section 2." H. Rep. No. 97-227, at 32 (1981). And while these committee pronouncements certainly appear clear on their face, the Court should exercise caution before ascribing any substantive weight to them. Doing so risks upending a statute in favor of what a small minority on a committee may or may not have felt about that statute.

Turning once more to Justice Scalia's treatise, which although not binding, is persuasive on this issue, it is clear so-called "committee reports" should be *highly* scrutinized by inquiring courts, if considered at all:

> As for committee reports, they are drafted by committee staff and are not voted on (and rarely even read) by the committee members, much less by the full house. And there is little reason to believe that the members of the committee reporting the bill hold views representative of the full chamber… Statements in committee hearings are so far removed from what the full house could possibly have had in mind that their asserted relevance is comical… **The stark reality is that the only thing that one can say for sure was agreed to by both houses and the**

> **President (on signing the bill) is the text of the statute**.
> The rest is legal fiction.

Scalia & Garner, READING LAW 376 (emphasis added). And reaching to far-flung committee reports is particularly unhelpful in determining whether Congress established a private right of action because "under federal law… [it] must be unambiguously conferred." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 332 (2015). Indeed, the very act of turning to committee reports suggests the presence of ambiguity in the statute. Moreover, in relying on "hidden legislative wishes, [courts] risk displacing the legislative compromises actually reflected in the statutory text… The only thing a court can be sure of is what can be found in the law itself." *Va. Uranium, Inc., v. Warren,* 139 S. Ct. 1894, 1908 (2019) (plurality op.).

Ultimately, the committee reports and subjective legislative history surrounding the VRA deserve no part in this Court's analysis.

### IV. Congressional inaction has not "ratified" a private right of action.

Plaintiffs' final salvo in their effort to create a private right of action under Section 2 of the VRA reads essentially as follows: if Congress did not want a private right of action, it could have simply provided language in Section 2 that no such right exists. *See, e.g.* [Doc. 66, p. 27] (where Plaintiffs state that Congress's "failure to change the statute in the face of [allegedly]

11

overwhelming judicial precedent evidences its agreement with the courts' consistent reading of Section 2 as providing for a private right of action"). But this theory is incorrect for at least two reasons.

First, it turns the standard for creation of a private remedy on its head. Congress must unambiguously *create* a private right of action in order for one to exist, it is not the job of Congress to unambiguously *deny* a private right of action. *Armstrong*, 575 U.S. at 332.

Second, while it is true that "Congress is presumed 'to have been aware of the scope of [the statute] as interpreted by lower courts,'" [Doc. 66, p. 27] citing *Liu v. SEC,* 140 S. Ct. 1936, 1947 (2020), and "leaving [a] statute without change in face of judicial opinion evidences congressional intent," *id.,* that is only true where the issue has been squarely considered and there is general consensus among judicial opinion on the topic. But as Justice Gorsuch recently noted in a concurring opinion, the courts have only "assumed—without deciding," the issue. *Brnovich*, 141 S. Ct. at 2350 (Gorsuch, J., concurring). And, as that quote suggests, an assumption is not— and cannot be—a decision. Moreover, Congress' decision to craft amendments to certain sections of the VRA, and to reauthorize others, is not an indication that revisions to other sections were considered and rejected. When "Congress has not comprehensively revised a statutory scheme but has made

only isolated amendments . . . [i]t is impossible to assert with any degree of assurance that congressional failure to act represents affirmative congressional approval of [a court's] statutory interpretation." *AMG Capital Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1351 (2021), quoting *Sandoval,* 532 U.S. at 292. Accordingly, no presumption of ratification attaches here.

## CONCLUSION

Plaintiffs are correct that courts have long assumed—without deciding—that Section 2 empowers private plaintiffs to bring a cause of action. But when the question is squarely considered, it is evident that the longstanding assumptions regarding Section 2 were misplaced. And because there are no examples of binding precedent where higher courts definitively found a private right of action under Section 2, this Court is free to consider the issue anew, and should do so based on the text, not conjecture. Based on that text, this Court should grant Defendants' Motion to Dismiss.

Respectfully submitted this 17th day of June, 2022.

> Christopher M. Carr
> Attorney General
> Georgia Bar No. 112505
> Bryan K. Webb
> Deputy Attorney General
> Georgia Bar No. 743580
> Russell D. Willard
> Senior Assistant Attorney General
> Georgia Bar No. 760280

Charlene S. McGowan
Assistant Attorney General
Georgia Bar No. 697316
40 Capitol Square, S.W.
Atlanta, Georgia 30334

*/s/Bryan P. Tyson*
Bryan P. Tyson
Special Assistant Attorney General
Georgia Bar No. 515411
btyson@taylorenglish.com
Frank B. Strickland
Georgia Bar No. 687500
fstrickland@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: (678) 336-7249

*Attorneys for Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the undersigned certifies that the foregoing Brief has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Bryan P. Tyson*
Bryan P. Tyson