**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| GEORGIA STATE CONFERENCE OF THE NAACP, et al. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:21-CV-5338- |
| STATE OF GEORGIA, et al. | ) ) | ELB-SCJ-SDG |
| Defendants. | ) ) | |
| _____ | ) | |
| COMMON CAUSE, et al., | ) ) | |
| Plaintiffs, | ) ) | Case No. 1:22-CV-00090- |
| v. | ) ) | ELB-SCJ-SDG |
| BRAD RAFFENSPERGER | ) ) | |
| Defendant. | ) ) | |

**STIPULATION AND ORDER REGARDING DISCOVERY**

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, the undersigned Parties have entered into this Stipulation and Order to reduce the time, expense, and other burdens of discovery of documents, things, and electronically stored information ("ESI"), and to govern discovery obligations in this action.

**I. GENERAL PROVISIONS**

    A. The Parties, as well as their officers, directors, employees, and agents are referred to as the "Parties" solely for purposes of this stipulation.

B. "Plaintiff" or "Plaintiffs" as used here shall mean the parties listed in Appendix A.

C. "Defendant" or "Defendants" as used here shall mean the parties listed in Appendix B.

## II. PRESERVATION AND PRODUCTION OF DOCUMENTS

### A. Preservation

1. The Parties agree that by preserving documents, things, and ESI for the purpose of this litigation, they are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

2. This Stipulation and Order does not modify any Party's obligation to maintain and preserve documents, things, and ESI where otherwise required by law, pursuant to a court order or administrative order, or in response to other anticipated litigation.

### B. Limitations on Obligation to Preserve and Produce

Subject to § II.E.1.c, for purposes of this action, the Parties agree to limit the scope of preservation as described in this section.

1. The Parties agree that for purposes of this litigation they do not need to take specific, affirmative steps to preserve the following categories of ESI:

   a. Delivery or read receipts of e-mails;

   b. Logs or other data from video-conferencing (including, *e.g.*, Teams or Zoom) or instant messaging tools involving (i) attorneys for the Plaintiffs in this case (and their staff)

and/or (ii) attorneys for Defendants in this case (and their staff);

c. Temporary or cache files, including internet history, web browser cache, and cookie files, wherever located;

d. Internally facing server system logs;

e. Externally facing or hosted file sharing system logs;

f. System data from photocopiers or fax machines;

g. Auto-saved copies of electronic documents;

h. Deleted, slack, fragmented, or other data only accessible by forensics;

i. Random access memory ("RAM"), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

j. Logs of or other data from audio calls (including, *e.g.*, landline phones, mobile devices, and Voice Over Internet Protocol ("VOIP")) made to or from (i) attorneys for the Plaintiffs in this case (and their staff) or (ii) attorneys for Defendants in this case (and their staff);

k. Voicemail messages on the voicemail systems of (i) attorneys for the Plaintiffs in this case (and their staff) or (ii) attorneys for Defendants in this case (and their staff).

2.   When duplicate copies[1] of relevant ESI exist in more than one location, this Order does not require a Party to preserve all duplicates as follows:

    a.   ESI existing or stored on mobile or portable devices (*e.g.*, smartphones, tablets, thumb drives, CDs, DVDs, etc.) or file sharing sites does not need to be preserved pursuant to this Order *provided that* duplicate copies of the ESI, including metadata, are preserved in another location reasonably accessible to the Party.

    b.   ESI on backup tapes, continuity of operations or disaster recovery systems, data or system mirrors or shadows, and other systems that are used primarily for the purpose of system recovery or information restoration and are not reasonably accessible ("Backup Systems") need not be preserved pursuant to this Order *provided that* duplicate copies of relevant ESI have been preserved in another reasonably accessible location. However, if a Party knows that relevant ESI exists *only* on a Party's Backup System, the Party will take reasonable steps to preserve ESI on the Backup System until the Parties can agree on how and when the ESI will be preserved or produced. If the Parties

---

[1] A "duplicate" in the context of this Order means a copy of an identical document, identified by matching hash values, as described in paragraph II.E.2.f, below.

cannot reach agreement, they will seek a ruling from the Court.

3.    The Parties agree not to seek discovery of documents, things, and ESI that they have agreed not to preserve pursuant to § II.B.1-2 above. As provided in § II.E.1.c below, the Parties do not need to list such items on a privilege log that is prepared and served in discovery.

**C. Limitations on Obligation to Collect, Review, and Produce**

Subject to § II.E.1.c, for purposes of this action, the Parties agree to limit the scope of collection, review, and production as described in this section.

1.    For relevant documents, things, or ESI (including internal communications, drafts, versions, and collaboration on case-related work) created or exchanged *on or after* December 30, 2021, the date on which the first of the related cases was filed, the Parties agree that they do not need to collect, review, or produce such materials created by and, if shared with any other(s), exchanged *solely among*: (1) attorneys for any of the Plaintiffs in this case (and their staff); or (2) attorneys for any of the Defendants in this case (and their staff). The Parties further agree that they do not need to collect, review, or produce privileged communications exchanged solely between the Parties and their attorneys, created on or after December 30, 2021, provided that the communications do not include non-privileged materials.

2. For relevant documents, things, or ESI (including internal communications, drafts, versions, and collaboration on case-related work) created or exchanged *before* December 30, 2021, the Parties agree that they do not need to collect, review, or produce such materials created by and, if shared with any other(s), exchanged *solely among* (1) the attorneys for a particular Plaintiff or Plaintiff Group (and their staff); or (2) the attorneys for a particular Defendant or Defendant Group (and their staff).

3. The Parties agree not to seek discovery of documents, things, and ESI that they have agreed not to collect, review, or produce pursuant to § II.C.1-2 above. As provided in § II.E.1.c below, the Parties do not need to list such items on a privilege log prepared and served in connection with discovery in this case.

**D. Identification & Production of Documents, Things, and ESI**

1. <u>Search Process and Criteria</u>

   a. It is the responsibility of the Party responding to a discovery request to identify and produce responsive information including ESI. The Parties agree to meet and confer if either believes that date ranges or the use of keyword search criteria or analytic tools should be used to identify responsive ESI. The Parties will also meet and confer prior to the use of any advance culling or technology assisted review methodologies.

b. The Parties shall produce responsive, non-privileged ESI and hard copy materials from a list of custodians that the Parties will attempt to agree upon. The Parties will cooperate with each other in advising which of their custodians, if any, are likely to have responsive information in their possession, custody or control. In addition, the parties will be responsible for identifying, searching, and producing from all non-custodial data sources (including but not limited to databases, information archives, shared drives, etc.) reasonably likely to have requested information.

c. The Parties agree that the use of an agreed-on search process or set of search criteria shall not be construed as a waiver of any Party's right to request subsequent searches and productions, where there is a showing that the agreed-to search process and criteria have resulted in inadequate productions or failed to identify relevant materials. The Parties also reserve their right to object to any additional requests or subsequent searches.

2. <u>Production Format</u>

a. ESI and hard copy paper documents will be produced as specified here.

b. Each hard copy paper document must be scanned and produced in electronic form as specified here.

c.  Unless the Parties agree to a different production format, for ESI and scanned hard copy paper documents, black and white content shall be scanned or converted to single page Tagged Image File Format ("TIFF"), using CCITT Group IV compression at 300 d.p.i. and that accurately reflects the full and complete information contained in the original document. One image file shall represent one page of the document. Color content shall be produced as JPEG files at 300 d.p.i. using a high-quality setting. Nothing in this provision prevents a Party from scanning, converting, and/or producing documents or content as color images. Unless the parties agree in writing to produce color content in black and white, a party shall produce color content in color.

d.  For ESI and scanned hard copy paper documents, the text of all pages in the document must be saved as one file. For ESI, the text must be extracted from the native file. If the extracted text of a native document does not exist or does not represent the entire document, Optical Character Recognition ("OCR") will be provided instead. For hard copy documents and for any redacted documents, OCR text will be provided.

e.  The Parties should preserve metadata and produce metadata for the fields listed in Appendix C. However, the Parties are not obligated to produce any of the metadata

listed in Appendix C if doing so would be too burdensome *except that* the parties must always populate the following metadata for Documents and ESI: (a) Begin Bates, (b) End Bates, (c) Custodian, (d) Prod Volume, and (e) Source Party. To clarify, any metadata that is already in the possession of the document custodian or the document custodian's employer is not too burdensome to produce.

f. The Parties shall make reasonable efforts to deduplicate ESI. ESI shall be globally deduplicated across all custodial and non-custodial sources. Documents are considered exact duplicates if a document family or stand-alone file has a matching hash value (e.g., MD5 or SHA-1) as compared against the same document type (i.e., family or stand-alone file). Custodian information for deduplicated documents must be preserved and produced in the All_Custodians metadata field.

g. All productions will provide a consistent load file with the same number and order of fields regardless of the types of documents in the production.

h. All images (*e.g.*, TIFF, JPEG) will be produced in a directory labeled IMAGES. Subdirectories may be created so that one directory does not contain more than 5000 files.

i. All native files (with the proper Windows-associated extension) will be produced in a directory labeled

NATIVE. Subdirectories may be created so that one directory does not contain more than 5000 files.

j.  An image cross reference file (a file in Concordance Opticon/Relativity .log format that contains Bates Numbers, paths to images, and document break indicators for all ESI in each production) and a load file containing all required metadata fields will be produced in a directory labeled DATA.

k.  All extracted text and/or OCR will be produced in a directory labeled TEXT. OCR is searchable text generated for scanned documents or native files that is in ASCII format, where all pages in the document will be represented in one file. The Parties agree to provide a text file for all documents, even if the size of the file is zero. Subdirectories may be created so that one directory does not contain more than 5000 files.

l.  If a Party needs to redact a portion of a document for which only a native file would be produced, the Parties the producing party agrees to provide reasonable information regarding how to read and/or construe the redactions of the native document.

m.  Except for native files, the Parties will produce responsive documents Bates-stamped with a prefix to indicate the Party producing the documents. The Bates numbering convention shall be in the format "XXX########" where

"XXX" represents the short character abbreviation for the producing Party and "########" represents the eight-digit sequential number of the page being produced by that Party. Each Party will use a unique abbreviation. For native files, which cannot be Bates-stamped, the Parties will rename the file as [Bates Number].[extension] with a single-page placeholder image in the production containing the original name of the file and stamped with the corresponding Bates number.

n. <u>Specifications for Specific File Types</u>:

    i. <u>Text Messages</u>. The Parties will meet and confer to seek agreement on an appropriate production format if a Party identifies text messages that are potentially responsive to a request.

    ii. <u>Audio files and video files</u> shall be produced as native files unless the native form is a proprietary format, in which case the Parties will meet and confer regarding production. Any such conference shall be held within seven (7) days of identification of such materials in initial disclosures, a direct request for the production of audio or video files, or a determination by a producing Party that such materials are responsive to a broader request, and any such conference shall include the technicians

with sufficient knowledge to explain the content and format of the material at issue.

iii. <u>Excel or other types of spreadsheets</u> shall be produced as native files with all cells unlocked. For each Excel or spreadsheet file, a placeholder image containing the file name shall be included in the production.

iv. <u>Presentations (e.g., PowerPoint)</u> shall be produced as both (1) color images with extracted text and (2) native files with all notes unaltered and viewable. For each presentation file, a placeholder image containing the file name shall be included in the production.

v. <u>Social media content</u> (including comments, "likes," sharing, and other interactions with the post(s)) should be produced as individual images with extracted text, including information about the participants and the date and time of the communications.

o. The Parties will meet and confer regarding the production of records or data from systems of record or databases in an agreed upon format. Any such conference shall be held within fourteen (14) days (unless the Parties agree to a later date) of identification of databases in initial disclosures, a direct request for the production of

databases, or a determination by a producing Party that databases are responsive to a broader request, and any such conference shall include the technicians with sufficient knowledge to explain the content and format of the databases.

p. The Parties agree to meet and confer regarding alternative production formats, including native files or pdf, should the producing Party find that it is unduly burdensome to adhere to the production format specified in this section for certain documents, in light of the format in which the documents are maintained in the ordinary course of business.

3. <u>Production Media</u>

a. Except for records or data produced from large databases or database systems (*e.g.*, state voter files), responsive documents and ESI will be produced via .zip file(s) uploaded to an electronic file transfer site, or as otherwise agreed by the Parties. Productions produced via an electronic file transfer site will be divided into .zip files of no more than 20 gigabytes each.

b. Productions via electronic file transfer will be uploaded in a manner (or otherwise clearly labeled) to indicate (1) the Party producing the information, (2) the date of the production, and (3) the Bates-range(s).

c. Records or data produced from large databases or database systems (*e.g.*, state voter files, etc.) will be produced on CD, DVD, thumb drive, or hard drive appropriate to the size of the production via overnight delivery to counsel for the requesting Party. Such production media will be clearly labeled to indicate (1) the Party producing the information, (2) the date of the production, and (3) the Bates-range(s).

d. The Parties agree to remove all encryption or password protection for all ESI produced or, if applicable, to provide passwords or assistance needed to open encrypted files.

**E. Privileged Documents, Things and ESI**

1. <u>Privilege Logs and Redactions</u>

a. Where a producing Party has any document that contains both privileged and non-privileged responsive information, the responsive information shall be produced, but the privileged information may be redacted. Unless the Parties agree otherwise, for all documents withheld in whole or in part based on privilege, the Parties agree to furnish logs which comply with the legal requirements under the Federal Rules of Civil Procedure. At minimum, the privilege log must contain a Bates range, the type of document, the date of the creation or last modification or transmission of the document, the author or authors of the document with any attorneys designated as such, the

recipients of the document (including individuals copied or blind- copied, if available) with any attorneys designated as such, whether the document contains attachments, the privilege or privileges claimed, and the basis for the assertion of the privilege or protection.

b. Privilege logs may be produced on a rolling basis, but, in any event, no later than 30 days after each associated production. If any log is produced less than 30 days before the close of discovery, the receiving Party shall have thirty (30) days from the date of receipt to review and register complaints about said log(s), and shall have the right to have those complaints resolved, and have any non-privileged documents produced, regardless of the date of the close of discovery.

c. If any discovery request appears to call for the production of documents, things or ESI covered by § II.B or II.C, the responding Party is not required to produce or identify such information on a privilege log. However, if a Party preserves relevant documents, things, or ESI covered by § II.B or II.C in order to support a claim or defense in this case, the Party shall produce such information or identify it on a privilege log notwithstanding this subsection.

2. <u>Inadvertent Disclosure of Privileged or Protected Information</u>

a. The Parties agree that a disclosure of information contained within documents, things, and ESI that is

protected by attorney-client privilege, work product protection, common interest privilege, and/or applicable governmental privileges (such as deliberative process privilege) does not operate as a subject matter waiver in this case if: (1) the disclosure is inadvertent and is made in connection with this litigation; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error.

b. If the producing Party inadvertently discloses information that it asserts is privileged or protected, it will notify the receiving Party within 14 days of discovery of inadvertent disclosure and provide the production date, number, and volume of the disc or drive on which the production was produced, if applicable, ("production media"), and the Bates number(s) or Document ID (for native files) of all material that it believes contains the inadvertently disclosed information.

c. If a production contains information that the receiving Party believes is privileged or protected and was inadvertently produced, it will promptly notify the producing Party and provide the Bates number(s) or Document ID (for native files) of the item it believes was inadvertently produced. Within 14 days after receiving notification, the producing Party may make a written

request for return of the material. If the producing Party does not send a written request for return of the material to the receiving Party within 14 days of the notification, the producing Party waives all claims of privilege or protection as to the material, but this still does not operate as a subject matter waiver.

d. When the receiving Party receives a written demand for return of the material, it will make reasonable, good faith efforts to promptly sequester, return or destroy all inadvertently produced material identified by the producing Party. If copies of inadvertently produced materials are located or stored on the receiving Party's Backup System(s), those copies need not be affirmatively removed but, rather, the receiving Party may overwrite those copies according to its normal records management procedures.

e. If the receiving Party must destroy or delete production media (*e.g.,* CD, DVD, thumb drive, or downloaded file(s)) in order to destroy or delete inadvertently produced material, the producing Party will provide a duplicate copy of the production media minus only the inadvertently produced material within 14 days of its written request for return of the material to the receiving Party.

f. If the receiving Party intends to challenge the claim of privilege or protection or the inadvertence of the

production, it will sequester and retain the inadvertently produced material while seeking a ruling from the Court. Nothing in this Stipulation prevents access by a receiving Party's information technology or security personnel from accessing, in the normal course of their work, systems or locations where inadvertently produced material is sequestered.

F. **Costs of Document Production**: Each Party shall bear the costs of producing its own documents, things, and ESI.

## III.   MISCELLANEOUS

A. The Stipulation may be executed in counterparts.

B. The terms of this Stipulation and Order are not exhaustive. Each Party reserves the right to subsequently request to meet and confer to address any discovery matters, including forms of production and other matters not addressed herein.

C. None of the meet and confer provisions of this Stipulation shall be construed to extend the time within which a Party must respond to a discovery request.

D. The Parties agree that discovery requests may be served by email.

Agreed to by counsel for the Parties:

For the Georgia State Conference of the NAACP, et al. Plaintiffs:

*/s/ Toni Michelle Jackson*
_____

For the Common Cause Plaintiffs:

 /s/ Hartley West
_____


For Defendants:

 /s/ Bryan Tyson
_____

# Appendix A

The Plaintiffs in this action are:

**Georgia State Conference of the NAACP**

**Georgia Coalition for the People's Agenda, Inc**

**GALEO Latino Community Development**

# Appendix B

The Defendants in this action are:

**The State of Georgia**

**Governor Brian Kemp**

**Secretary Brad Raffensperger**

# Appendix C

| Field Name | Definition | Include for Emails and Text Messages | Include for other electronic files | Include for Paper documents |
|---|---|---|---|---|
| **Begin_Bates** | Bates number for the first image of a document (or the Bates number of the placeholder page for a native document). | Y | Y | Y |
| **End_Bates** | Bates number for the last image of a document (or the Bates number of the placeholder page for a native document). | Y | Y | Y |
| **Begin_Attach** | <u>Only</u> for families[2], provide Bates number for the first image of the first attachment or embedded file. Leave this fieldblank if there isno document family | Y | Y | Y |
| **End_Attach** | <u>Only</u> for document families, provide Bates number for the last image of the last attachment or embedded file. Leave this fieldblank if there isno document family. | Y | Y | Y |

---

[2] Document Family means a group of related documents, including: (1) paper documents that were grouped together or physically attached by clips, staples, binding, folder, etc.; (2) email with its attachment(s); and (3) files with embedded documents

| | | | | |
|---|---|---|---|---|
| **Parent ID** | Bates number of the parent document (filled in only for "child" documents). | Y | Y | Y |
| **PgCount** | The number of images produced for this document (1 for placeholder). | Y | Y | Y |
| **From** | "From" field in email. | Y | | |
| **To** | "To" field in email. | Y | | |
| **CC** | "CC" field in email. | Y | | |
| **BCC** | "BCC" field in email. | Y | | |
| **Subject** | "Subject" field in email. | Y | | |
| **Attachments** | File names of the attachments. | Y | | |
| **DateSent** | DateSent field from email. Include both date and time (format: 9/28/2012 1:16 PM or 9/28/2012 13:16:34). | Y | | |
| **Redacted** | "Yes" if the document has been redacted. | Y | Y | Y |
| **Confidential** | Confidential Designation (if any). | Y | Y | Y |
| **MD5Hash** | The MD5 hash value calculated when the file was collected or processed. | Y | Y | |

| | | | | |
|---|---|---|---|---|
| **Prod_FilePath** | The path to thenative file on the productionmedia. | | Y | |
| **Native_filename** | Original nameof the native file when thefile was collected or processed. | Y | Y | |
| **Text File Path** | Path to the textfile on the production media. | Y | Y | Y |
| **All_Custodians** | Additional custodians whohad a copy of the document prior to de-deduplication, including duplicate custodians. | Y | Y | |
| **Custodian** | Name of custodian associated to original produced file (Last Name, First Name format) Where redundant names occur, Individuals should distinguished by an initial which is kept constant throughout productions. For instance: Smith, John A.and Smith, John B | Y | Y | |
| **Calendar_Start_ Time** | Start date andtime of calendar or appointment | | Y | |
| **Author** | Author ofdocument | | Y | Y |

| | | | | |
|---|---|---|---|---|
| **LastAuthor** | Last author or editor of document, from documentproperties | | Y | |
| **Email Importance** | Whether an e-mail was marked with "high importance." | Y | | |
| **Comments** | Comments field value pulled from the metadata of thenative file. | | Y | |
| **Hidden_Information** | Microsoft Word, Excel orPowerPoint document contains comments, track changes, or hidden information. | | Y | |
| **DateCreated** | Date the document was created (format: MM/DD/YYYY) | | Y | |
| **TimeCreated** | Time at whichdocument wascreated | | Y | |
| **DateLastModified** | Date an electronic document waslast modified (format: MM/DD/YYYY) | | Y | |
| **TimeLastModified** | Time at whichdocument waslast modified | | Y | |
| **FileName** | File name of an electronic document | | Y | |

| | | | | |
|---|---|---|---|---|
| **FileExt** | File extension | Y | Y | |
| **FileSize** | The original file size of theproduced document | | Y | |
| **ProdVolume** | The productionvolume associated with the produced file. | Y | Y | Y |
| **SourceParty** | The name of the ProducingParty | Y | Y | Y |
| **Child_ID** | Any documents attached to the present document | Y | Y | |
| **Date_Recieved** | Date document came into custodian's possession | Y | Y | Y |
| **Mobile_Particip ants** | Any persons being communicated with on a text message or other direct message | Y | Y | |