## Alisha Holland

**From:** Canter, Jacob <JCanter@crowell.com>
**Sent:** Tuesday, August 2, 2022 1:04 PM
**To:** Pamela Wright; Alisha Holland
**Cc:** GA-Redistricting; Patrick Jaugstetter; Karen Pachuta; Khoury, Alex; Shawn Marie Marie Story; West, Hartley; Steiner, Neil; jack.genberg@splcenter.org; Matletha Bennette; poy.winichakul@splcenter.org; Turret, Sharon; EXT_Ezra Rosenberg; Julie Houk; kurt@kastorflaw.com
**Subject:** Georgia State Conference of the NAACP v State of Georgia, 21 Civ. 5338-ELB-SCJ-SDG | Notice of Discovery Dispute

**CAUTION - EXTERNAL:**

Ms. Wright and Ms. Holland,

I am writing on behalf of Plaintiffs Georgia State Conference of the NAACP, Georgia Coalition for the People's Agenda, Inc., and Galeo Latino Community Development Fund, Inc. (collectively, the "**Georgia NAACP Plaintiffs**"). I am writing in regards to a discovery dispute with third parties Representative Bonnie Rich, Senator John Kennedy, the Senate Redistricting & Reapportionment Committee, the House Legislative and Congressional Reapportionment Committee, Gina Wright, and the Legislative and Congressional Reapportionment Office (collectively, the "**Legislature Parties**"). The co-Plaintiffs Common Cause, League of Women Voters of Georgia, Dr. Ursula Thomas, Jasmine Bowles, and Dr. H. Benjamin Williams (the "**Common Cause Plaintiffs**") are not parties to this discovery dispute. However, because this dispute impacts the ability for the Common Cause Plaintiffs to complete discovery, counsel for the Common Cause Plaintiffs are cc'd to this email as well. We have not been able to locate contact information for the Chambers of Judge Branch, though we would appreciate you notifying Judge Branch's chambers about this email as well.

The Georgia NAACP Plaintiffs and Legislature Parties disagree on the scope of the legislative privilege and require court intervention to determine how to proceed with document discovery and depositions. The Georgia NAACP Plaintiffs proposed a solution based on the approach endorsed by the Fifth Circuit in *League of United Latin American Citizens, et al. v. Abbott,* 2022 WL 2713263 (5th Cir. May 20, 2022). The Legislature Parties do not accept this approach and have proposed a different solution. The parties, with counsel for all parties present, have engaged in good faith efforts to resolve the dispute, but agree that resolution without court intervention is not possible.

We have contacted chambers regarding this dispute pursuant to Section III.f of Judge Grinberg's standing order and Section III.E of Judge Jones' standing order. The Georgia NAACP Plaintiffs believe this is a critical discovery issue that needs to be resolved in order for the case to move expeditiously forward. We appreciate your guidance on how best to proceed.

**Jacob Canter**
Pronouns: he/him/his
jcanter@crowell.com
+1.415.365.7210 direct | +1.415.385.3716 mobile
LinkedIn

Crowell & Moring LLP
3 Embarcadero Center
26th Floor
San Francisco, CA 94111

1

# Crowell

**Collaboration Powers Success**

crowell.com

This message may contain privileged and confidential information. IF IT WAS SENT TO YOU BY MISTAKE, DO NOT READ IT. Instead, please notify the sender (or postmaster@crowell.com) by reply e-mail, and delete this e-mail. Unauthorized dissemination, forwarding or copying of this e-mail is strictly prohibited.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

Judge Grimberg,

As a preliminary matter, legislative privilege does not apply to the discovery that Plaintiffs have sought from the Third Parties. Nevertheless, Plaintiffs do not ask the Court to rule today on the legislative privilege's scope or its application to this case. Rather, Plaintiffs request this Court to approve a process whereby this case can proceed through discovery expeditiously, while still allowing the Court an opportunity to assess the Third Parties' privilege assertions.

To date, Plaintiffs have served subpoenas requesting narrow categories of documents and depositions. Nevertheless, the Third Parties have asserted objections based on the legislative privilege to every single request and topic to date. Thus, the parties require Court intervention to set a clear and efficient path forward.

### I. Plaintiffs' Proposal Appropriately Protects the Legislative Privilege

Plaintiffs' proposal allows for discovery to proceed unhindered, while still protecting any valid privilege claims the Third Parties may have. The proposal is therefore in the best interest of the parties. Plaintiffs' proposal likewise provides a streamlined process that is most efficient for the Court—ensuring that any privilege issues can be addressed collectively. The proposal is modeled off a process recently approved by the Fifth Circuit in a gerrymandering case. *See League of United Latin American Citizens, et al. v. Abbott*, 2022 WL 2713263 (5th Cir. May 20, 2022).

| **Procedures for Depositions** |
|---|
| Deponents must sit for their noticed/subpoenaed deposition. If a question is asked that the deponent or their counsel believe raises a legislative privilege concern, counsel for the deponent may make an oral objection that the question is legislatively privileged. All answers that receive such an objection will be treated as presumptively HIGHLY CONFIDENTIAL-AEO. At the close of discovery, the Third Parties may bring an omnibus legislative privilege motion to quash explaining their stance on the various objections they raised. |
| **Procedures for Document Discovery** |
| The Third Parties may label all documents they or their counsels believe are legislatively privileged with a stamp that reads HIGHLY CONFIDENTIAL—LEGISLATIVE PRIVILEGE. All documents with Third Parties' subjective privilege stamp will be treated as presumptively HIGHLY CONFIDENTIAL-AEO. At the close of discovery, the Third Parties may bring an omnibus legislative privilege motion to quash explaining their stance on the various documents that they designated privileged. |

This proposal ensures that the Court makes a decision on the applicable privilege based on all of the materials the Third Parties seek to protect, freeing the Court from any guesswork. It also ensures that efforts to protect the privilege do not delay discovery. Plaintiffs have agreed that following this process will not constitute any waiver of the privilege, and are willing to enter into an appropriate stipulation pursuant to Federal Rule of Evidence 502(d) to that effect.

## II.   The Third Parties' Proposal Misapprehends the Law and Causes Delays

For document discovery, the Third Parties propose producing a privilege log that identifies only the categories of documents withheld based on the legislative privilege, and no more. For depositions, the Third Parties propose reviewing topics prior to depositions, and then deciding which topics are off-limits.

***This misapprehends the law.*** This approach impermissibly shifts the burden of explaining why materials are *not* privileged onto Plaintiffs. However, the party withholding documents or testimony has the burden to establish they are privileged or protected. *See Hodges, Grant & Kaufmann v. United States,* 768 F.2d 719, 721 (5th Cir. 1985); FRCP 45(e).

Here, the Third Parties ask this Court for a blanket legislative waiver over all topics and categories that Plaintiffs have thus far sought, without pointing to specific facts or documents. But it is the Third Parties' burden to do just that. *See e.g.*, *Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 344 (E.D. Va. 2015) ("[T]he proponent of a privilege must demonstrate specific facts showing that the communications were privileged.") (citation omitted). To assert legislative privilege, a recipient must show that a communication "contains or involves opinions, motives, recommendations, or advice about legislative decisions between legislators or between legislators and their staff." *Jackson Mun. Airport Auth. V. Bryant*, 2017 WL 6502967, at *7 (S.D. Miss. Dec. 19, 2017) (citations omitted). And, especially in this case where important federal interests are at stake, this will likely require decisions on a document-by-document or question-by-question basis.

***The Third Parties' proposal causes delay and overburdens the Court***. The Third Parties' proposal requires multiple rounds of Court intervention and potentially forces the Court to make multiple decisions without all the relevant facts.

3

The parties already are in dispute over which categories of documents and testimony are appropriately privileged, given the Third Parties' objection to every single document request and deposition topic. Thus, following the Third Parties' proposal would necessarily delay the production of documents and timely depositions. Additionally, because the legislative privilege is not an absolute privilege, there will likely be further disputes about whether certain specific documents or questions are privileged, and if so, whether the privilege in those specific instances is overcome by the important federal interests in this litigation. Again, this will likely require Court intervention—and further delay.

Not only does this type of delay cause Plaintiffs prejudice, this piecemeal approach risks inconsistent applications of the privilege and taxes judicial resources.

### III. The Court Will Need To Determine If Important Federal Interests Overcome Assertions of Qualified Privilege

After the Third Parties identify what they contend is privileged, the Court must apply a five-factor analysis to determine if the "legislative privilege must yield . . . to vindicate important federal interests." *In re Hubbard*, 803 F.3d 1298, 1311 (11th Cir. 2015); *League of Women Voters of Fla., Inc. v. Lee*, 340 F.R.D. 446, 456 (N.D. Fla. 2021)[1]; *Bethune-Hill*, 114 F. Supp. 3d at 337 ("Most courts that have

---

[1] "The relevant factors are (1) whether the evidence Plaintiffs seek is relevant, (2) whether other evidence is available, (3) whether the litigation is sufficiently serious, (4) whether the government is involved in the litigation, and (5) whether upholding the subpoena defeats the legislative privilege's purpose." *Lee*, 340 F.R.D. at 456.

conducted this qualified privilege analysis in the redistricting context have employed [the same] five-factor balancing test"). Plaintiffs' proposal ensures that the Court has the specific documents and testimony available when weighing these factors:

***The evidence is relevant and no other evidence is available.*** Plaintiffs allege discriminatory purpose and vote dilution claims under Section 2 and constitutional gerrymandering.[2] The Third-Party legislators enacted the maps. The subpoenas seek evidence related to the motivations for how the maps were drawn, which is "highly relevant in proving [Plaintiffs'] Section 2 claim, as the documents reflect [the Third Parties'] contemporaneous thoughts and motivations in drafting and enacting [the district map at issue]." *League of United Latin Am. Citizens, et al. v. Abbott*, 3:21-cv-00259-DCG-JES-JVB, Dkt. 467, *9 (Jul. 25, 2022) (internal citations omitted) (citing *La Union Del Pueblo Entero v. Abbott*, 2022 WL 1667687, at *6 (W.D. Tex. May 25, 2022); *Jefferson Cmty. Health Ctrs., Inc. v. Jefferson Par. Gov't,* 849 F.3d 615, 624 (5th Cir. 2017) (the legislative privilege does not bar adjudication of claims

---

[2] To succeed on a racial gerrymandering claim, "the plaintiff must prove that 'race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district.'" *Cooper v. Harris*, 137 S. Ct. 1455, 1463 (2017) (quoting *Miller v. Johnson,* 515 U.S. 900, 916 (1995)). Plaintiffs' Section 2 discriminatory purpose claim is evaluated under the non-exhaustive factors set forth in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266-268 (1977). Even a Section 2 effects claim requires proving facts related to the legislative process. *See Thornburg v. Gingles,* 478 U.S. 30 (1986) (after the three preconditions are met, the court applies a "totality of the circumstances" analysis based on the "Senate Factors").

5

to which legislators' "motivations and thought processes" are relevant); *Jones v. City of Coll. Park*, 237 F.R.D. 517, 521 (N.D. Ga. 2006) (if Congress places "government intent" at the heart of a claim, there is a "compelling interest in discovery of evidence of such intent")). This type of information would not exist elsewhere. *See e.g.*, *Lee*, 340 F.R.D. at 457 (where the party "alone will possess much of the evidence Plaintiffs seek," this factor weighs in favor of the privilege yielding).

***Serious litigation.*** "Voting rights cases, although brought by private parties, seek to vindicate public rights. In this respect, they are akin to criminal prosecutions. Thus, much as in *Gillock,* [445 U.S. 360 (1980)], 'recognition of an evidentiary privilege for state legislators for their legislative acts would impair the legitimate interest of the Federal government." *Lee*, 340 F.R.D. at 453 (citation omitted).

This is why Courts regularly direct parties in redistricting cases to produce discovery—in concert with safeguards—despite assertions of the privilege. *See e.g.*, *League of United Latin American Citizens, et al. v. Abbott*, 2022 WL 1570858 (W. D. Tex. May 18, 2022); *Page v. Va. State Bd. of Elections,* 15 F. Supp. 3d 657 (E.D. Va. 2014); *Favors v. Cuomo*, 285 F.R.D. 187, 213-21 (E.D.N.Y. 2012); *BBC Baymeadows, LLC v. City of Ridgeland*, 2015 WL 5943250, at *6 (S.D. Miss. Oct. 13, 2015); *Kukla v. Vill. Of Antioch*, 1987 WL 9596, at *2 (N.D. Ill. Apr. 15, 1987); *Baldus v. Members of Wisconsin Gov't Accountability Bd.*, 849 F. Supp. 2d 840 (E.D. Wis. 2012); *United States v. Irvin*, 127 F.R.D. 169 (C.D. Cal. 1989).

***The Government is involved.*** The role of the government in this case is direct. This case focuses on "the motive and intent" of the state legislature when it re-drew and effected the voting districts at issue. *See League of United Latin Am. Citizens, et al. v. Abbott,* 3:21-cv-00259-DCG-JES-JVB, Dkt. 467, *11 (Jul. 25, 2022) (citations omitted). "The Legislators' role in the allegedly unlawful conduct is direct, and therefore militates in favor of disclosure." *Id.* (cleaned up) (citing *Favors v. Cuomo*, 2015 WL 7075960, at *11 (E.D.N.Y. Feb. 8, 2015)).

***The legislative privilege's purpose is not defeated.*** Legislative privilege exists to "encourage frank and honest discussion among lawmakers." *Lee*, 340 F.R.D. at 458 (quoting *Comm. For Fair & Balanced Map,* 2011 WL 4837508, *8). But "where important federal interests are at stake, the principle of comity, which undergirds the protection of legislative independence, yields." *League of United Latin Am. Citizens, et al. v. Abbott,* 3:21-cv-00259-DCG-JES-JVB, Dkt. 467, *11 (Jul. 25, 2022) (citations omitted) (citing *Benisek v. Lamone,* 263 F. Supp. 3d 551, 555 (D. Md. 2017)). Here, Plaintiffs seek only the narrow discovery needed to assess whether constitutional and statutory violations have occurred.

For these reasons, the Georgia NAACP Plaintiffs respectfully request that the Court allow discovery to proceed as outlined in the proposal at § I.