**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **GEORGIA STATE CONFERENCE OF** | ) | |
| **NAACP, ET AL.** | ) | |
| | ) | |
| **PLAINTIFFS,** | ) | **CIVIL ACTION NO.** |
| | ) | **1:21-CV-5338** |
| | ) | **ELB-SCJ-SDG** |
| **V.** | ) | |
| | ) | |
| **STATE OF GEORGIA, ET AL.** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |
| _____ | ) | |
| **COMMON CAUSE, ET AL.** | ) | |
| | ) | |
| **PLAINTIFFS,** | ) | **CIVIL ACTION NO.** |
| | ) | **1:22-CV-00090** |
| | ) | **ELB-SCJ-SDG** |
| **V.** | ) | |
| | ) | |
| **BRAD RAFFENSPERGER** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

_____

**<u>REPLY BRIEF IN SUPPORT OF MOTION
FOR PROTECTIVE ORDER</u>**

COME NOW, John Kennedy ("Senator Kennedy"), Bonnie Rich ("Representative Rich"), the "Senate Reapportionment and Redistricting Committee," the "House Reapportionment and Redistricting Committee," Gina Wright, Executive Director of the Legislative and Congressional Reapportionment Office, and the Legislative and Congressional Reapportionment Office (collectively the "Movants") and file this, their Reply Brief in Support of Motion for Protective Order, showing the Court as follows:

## I.   Introduction

Plaintiffs' position is incompatible with *In re Hubbard*, 803 F.3d 1298 (11th Cir. 2015). They either ignore that precedent or erroneously apply it throughout the entirety of their brief. Plaintiffs rely primarily on district court cases that either predate *In re Hubbard*, e.g., *Florida Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 164 F.R.D. 257, 267-68 (N.D. Fla. 1995), or fail to apply the principles enumerated in *In re Hubbard*.

Not only do Plaintiffs ignore precedent in this case, but they have also unnecessarily complicated this court's task by failing to address Movants' proposed compromise resolution which would call for the Movants to offer testimony and present evidence. Specifically, Plaintiffs have failed to identify any relevant evidence that they would not obtain by the acceptance of Movants' proposal.

2

## II.   Analysis and Citation to Authority

### A. Plaintiffs' Rejection of Movants' Proposed Compromise Is Unreasonable

Plaintiffs have adopted the unreasonable position of refusing to accept, discuss, or even address that proposed compromise as set forth in Movants' Motion for Protective Order and Brief in Support (Doc. 82) ("Motion"). Instead, Plaintiffs incorrectly allege in their Opposition to the Legislative Parties' Motion for Protective Order (Doc. 88) ("Response") that Movants failed to identify categories of documents for which they assert privilege -  as is expressly contradicted by Exhibit B to Plaintiffs' Response. (Doc. 88-3). That exhibit plainly delineates Movants' objections and literally highlights the areas for which Movants assert legislative privilege. Out of 78 subject areas proposed by Plaintiffs, Movants offered to testify and produce documents related to 51 of those areas despite the applicability of legislative privilege. In a second effort to reach a compromise (their first having been dismissed out of hand), Movants' proposal in its Motion provides Plaintiffs more expansive documents and testimony than originally offered, but Plaintiffs ignore that proposal in their Response to this Court[1].

---

[1] In fact, Plaintiffs improperly provide their arguments outside of the page limitations established by this court (see Doc. 88-4) by filing an additional 15 pages arguing to the purported relevancy of Plaintiffs' deposition topics and document requests.

In essence, Movants have proposed to give testimony and evidence as to all matters undertaken by them (or their respective Committees) in their official capacities, as related to the Maps and the legislative process that led to the formulation, consideration, and adoption thereof. The only matters about which Movants are not voluntarily offering to provide evidence and testimony are matters related to *other* bills considered, formulated or adopted by the General Assembly and testimony or evidence of comments and discussions made by other non-party members of the General Assembly who have not agreed to waive their legislative privilege as to those comments or discussions.

Plaintiffs' contention that Movants believe "legislative privilege applies to everything sought by Plaintiffs" is belied by the record in this matter. In particular, Movants have already produced abundant records, encompassing committee minutes, exhibits, statements and comments provided to the committees, and the data files for creating the maps. Furthermore, Movants produced 112 hours of video of floor debates, public hearings, public comments, and committee meetings, which include statements of motive and intent regarding the Maps and related legislation. The documents, records, and video files already produced by Movants are the types of evidence that courts traditionally look to in order to glean legislative intent and motivation.

4

> In surveying legislative history we have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which "represen[t] the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation." *Zuber v. Allen,* 396 U.S. 168, 186, 90 S.Ct. 314, 324, 24 L.Ed.2d 345 (1969). We have eschewed reliance on the passing comments of one Member, *Weinberger v. Rossi,* 456 U.S. 25, 35, 102 S.Ct. 1510, 1517, 71 L.Ed.2d 715 (1982)….

*Garcia v. United States*, 469 U.S. 70, 76 (1984).

Movants' voluntary production of documents and offer of testimony protected by legislative privilege articulated in their Motion, provides Plaintiffs the opportunity to explore facts and, if accepted by this Court, would allow discovery to proceed efficiently towards a reasonable conclusion.

### B. Legislative Privilege is Analogous to and Derives From the Speech and Debate Clause

As a general matter, Plaintiffs have misconstrued Movants' position when Plaintiffs contend that "[t]he Legislature Parties argue that the Speech or Debate Clause of the U.S. Constitution provides the basis for a Protective Order from the discovery sought by Plaintiffs." (Response, p. 8). In actuality, the Movants expressly acknowledge that the legislative privilege afforded to them arises from federal common law, not directly from the Speech or Debate clause. Movants' contend only that their legislative privilege is analogous to the privilege afforded Congress under the Speech or Debate Clause. Plaintiffs' disagreement with this uncontroversial

5

position is surprising. "[I]t is well-established that state lawmakers possess a legislative privilege that is 'similar in origin and rationale to that accorded Congressmen under the Speech or Debate Clause." *In re Hubbard* 803 F.3d at 1310, 1315; see also, *Bryant v. Jones*, 575 F.3d 1281, 1304 (11th Cir. 2009) (recognizing that the U.S. Supreme Court looked at Speech and Debate Clause jurisprudence to establish the contours of state legislative immunity); *see also Puente Arizona v. Arpaio*, 314 F.R.D. 664, 669 (D. Ariz. 2016) (finding that state legislators' protection from criminal, civil, or evidentiary process derives from the related doctrines of state and federal immunity and the Speech and Debate Clause).  It is within this framework of federal common law that Movants assert their privilege.

### C. Plaintiffs Incorrectly Claim Legislative Privilege Applies to Communications Only if Such Communications are Part of the Formulation of Legislation

The Eleventh Circuit Court of Appeals has clearly enunciated that the appropriate test for the application of legislative privilege is whether the information at issue falls within the sphere of legitimate legislative activity, specifically including the *proposal* of legislation, the *formulation* of legislation, or the *passage* of legislation. *In re Hubbard*, 803 F.3d at 1308. Despite that directive, Plaintiffs baselessly argue that legislative privilege should only apply if the communication relates to the formulation of legislation, which they imply is narrowly limited to the

6

actual drawing of the maps at issue. (Response, p. 11). Plaintiffs do not explain –
much less acknowledge – any rationale for ignoring Eleventh Circuit precedent
relating to the application of legislative privilege to the proposal and passage of
legislation.

Plaintiffs further use their mis-formulation of the *In re Hubbard* standard to
argue that legislative communications post-enactment are not covered by the
privilege. No such bright line rule can be divined from reading *In re Hubbard*.
Moreover, the dynamic nature of legislating in Georgia precludes such a bright line
rule as discussions about enacted legislation may relate to a future legislative
proposal. See *Jackson v. Delk*, 257 Ga. 541, 543 (1987) ("However, it is equally
axiomatic that subsequent legislation declaring the intent of a legislative body in
enacting an earlier statute is entitled to great weight in statutory construction")
(citation omitted). To the extent that post-enactment statements or communications
by legislators are within the sphere of legitimate legislative activity, they remain
privileged.

### D. Legislative Privilege Covers Facts Related to the Legislative Process

In support of their contention that Legislative Privilege does not "cover facts,"
Plaintiffs focus on two non-binding cases from district courts that permitted the
discovery of factual information from legislators. *Florida Ass'n of Rehab. Facilities,*

*Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 164 F.R.D. 257, 267-68 (N.D. Fla. 1995) (finding that while factual matters collected for legislators should not be privileged, there may still be privilege of communications between legislators and staff regarding opinions, recommendations, or advice about legislative decisions); *Comm. for a Fair & Balanced Map v. Illinois State Bd. of Elections,* 2011 WL 4837508, at *9 (N.D. Ill. Oct. 12, 2011) (finding that facts or information available to lawmakers were discoverable, but that legislative privilege shielded "pre-decisional, non-factual communications that contain opinions, recommendations or advice about public policies or possible litigation.").

However, these cases pre-date the Eleventh Circuit's clear pronouncement on the application of legislative privilege in *In re Hubbard,* which instructs that the pertinent inquiry for whether the privilege exists is whether the documentation falls within the sphere of legitimate legislative activity which includes the "legislators' actions in the proposal, formulation, and passage of legislation." *In re Hubbard*, 803 F.3d 1298, 1308 (11th Cir. 2015); accord *Thompson v. Merrill*, No. 2:16-cv-783-ECM, 2020 WL 2545317, at *3 (M.D. Ala. May 19, 2020) (holding "activity engaged in by legislators is still protected by the legislative privilege even if there are communications with non-legislators, as long as the communications were pursuant to the proposal, formulation, and passage of legislation").

8

The Court in *In Re Hubbard* did not distinguish between "facts" and "communications." Instead, the Court held that legislative privilege shields legislators from being required to provide evidence and testimony that relates to legislative activity. Communications involving legislators that relate to the redistricting process generally – which is the entire subject matter of the challenged legislation – are undoubtedly part of the legislative process and constitute legislative activity. Stated differently, the redistricting process is a legislative activity. Plaintiffs' attempt to divorce and somehow distinguish communications relating to the "redistricting process" from the "legislative process" is unavailing.

Despite Movants' certainty that legislative privilege covers facts as part of the legislative process, Movants' have already provided facts related to this process and, as detailed above, have agreed to testify to both those facts and the relevant legislative process as a whole.

### E. Plaintiffs Incorrectly Suggest that Legislative Privilege Must Yield in this Case

Plaintiffs incorrectly argue that, in the absence of civil liability, the sole factor to be balanced towards Movants' interests is the "burden of disruption that compliance with subpoenas may cause." (Response, p. 9). In *League of Women Voters of Florida, Inc. v. Lee*, 340 F.R.D. 446 (N.D. Fla. 2021), the Court acknowledged that "…asserting a constitutional claim is not enough to overcome

the [legislative] privilege" (internal citations omitted). *League of Women Voters*, 340 F.R.D. at 456. Plaintiffs' reliance on *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), is also misplaced. Citing to *Village of Arlington Heights*, Plaintiffs contend that their allegations of a discriminatory purpose in the passage of the new maps equates to a necessity for all documents and testimony underlying the design of the maps. However, that case acknowledged that, while legislative parties might be called to the stand, the testimony "frequently will be barred by privilege." *Id*. at 268 (citing to *Tenney v. Brandhove*, 341 U.S. 367 (1951)). In *Village of Arlington Heights*, the Supreme Court found that evidence derived from policies, official minutes, and prior rezoning allowed for sufficient inquiry into the alleged discriminatory intent. *Id*. at 269-270.

Plaintiffs have failed to articulate how Movants' compromise proposal is not sufficient to protect the interests which they seek to protect in this case. See, *League of Women Voters,* 340 F.R.D. at 458 (voting rights case where the court quashed deposition subpoenas of lawmakers in part because documents related to the challenged legislative action were produced by the legislators).

Plaintiffs assert that the Protective Order (Doc. 76) entered in this case offers Movants sufficient protection such that they need not rely upon legislative privilege. The Protective Order (to which the Movants did not consent) exists to preserve the

confidentiality of documents produced. Legislative privilege, on the other hand, is not merely about confidentiality of evidence produced, but ensuring that legislators are "free to make difficult decisions" without fear of being subsequently exposed by compulsory process. *Pulte Home Corp. v. Montgomery Cty.*, Maryland, 2017 WL 2361167 at *8 (D. Md. May 31, 2017).

## F. Movants Deny Plaintiffs' Allegations of Delay

Plaintiffs accuse Movants of delaying the proceedings. Such an allegation is baseless. The Movants have proposed a resolution of this discovery dispute that would avoid the Movants having to assert legislative privilege on interlocutory appeal. Furthermore, Plaintiffs are wasting Movants' time and resources - and that of this Court - by insisting that the Court "direct the parties to follow Plaintiffs' initial proposal to assess the privilege claims after documents are produced and depositions occur." (Response, p. 4). As shown in the Minute Entry for the telephone conference proceedings held before Judge Grimberg on August 9, 2022 (Doc. 81):

> "[t]he Court DENIED Plaintiff's proposed procedure for resolving legislative privilege objections from certain non-parties ("Legislature Parties")." The Court ORDERED the Legislature Parties to file a motion concerning its assertion of legislative privilege by 09/09/2022. Plaintiff's response shall be due 09/23/2022. The Legislature Parties' reply shall be due 09/30/2022."

It is Plaintiffs who are delaying this process by asking the Court to do what it has already rejected and specifically denied as a discovery resolution.

11

### III.    Conclusion

Under Rule 45(d)(1) governing third-party subpoenas, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." The Court also "must quash" a subpoena that "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed.R. Civ. P. 45(d)(3)(A). Not only have Plaintiffs in this case failed to take any steps to avoid imposing undue burden or expense upon the non-party Movants, but Plaintiffs have also refused to accept any portion of Movants' proposal, or even to engage in meaningful discussions about the application of legislative privilege.

Respectfully submitted this 30th day of September, 2022.

_/s/ Patrick D. Jaugstetter_
Patrick D. Jaugstetter
Special Assistant Legislative Counsel
**JARRARD & DAVIS, LLP**
Georgia Bar No. 389680
_Attorney for Movants_

222 Webb Street
Cumming, Georgia 30040
(678) 455-7150 – telephone
(678) 455-7149 – facsimile
patrickj@jarrard-davis.com

    */s/ Alex Khoury*
Alex Khoury
Special Assistant Legislative Counsel
**SMITH, GAMBRELL &**
**RUSSELL, LLP**
Georgia Bar No. 416978
*Attorney for Movants*

1105 West Peachtree Street
NE Suite 1000
Atlanta, Georgia 30309
(404) 815-3526 – telephone
(404) 685-6826 – facsimile
akhoury@sgrlaw.com

13

## CERTIFICATE OF SERVICE

I hereby certify that, in accordance with LR 5.1(A), (N. D. Ga.), I have this date electronically filed the within and foregoing **REPLY BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER** in the above-styled action with the Clerk of Court by using the Court's CM/ECF system, which will automatically send notice of same to the following:

**Astor H. L. Heaven** Crowell & Moring
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

**Ezra David Rosenberg**
Lawyers' Committee for Civil Rights Under Law
Suite 900
1500 K. Street NW
Washington, DC 20005

**Gilda Rae Williams**
Advancement Project
1220 L Street NW
Suite 850
Washington, DC 20005

**Jacob Canter**
Crowell & Moring, LLC - SF CA
3 Embarcadero Center
26th Floor
San Francisco, CA 94111

**Jon M. Greenbaum**
Lawyers' Committee for Civil Rights Under Law
Suite 900
1500 K. Street NW

Washington, DC 20005

**Julie Marie Houk**
Lawyers' Committee for Civil Rights Under Law
Suite 900
1500 K. Street NW
Washington, DC 20005

**Keith J. Harrison**
Crowell & Moring
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

**Kurt G. Kastorf**
Kastorf Law, LLC
1387 Iverson Street NE
Suite 100
Atlanta, GA 30307

**LaTonya Sims**
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004

**Raija Horstman**
Crowell & Moring, LLP - LA C
515 South Flower St
40th Floor
Los Angeles, CA 90071

**Shira Liu**
Crowell & Moring, LLP - I CA
3 Park Plaza
20th Floor
Irvine, CA 92614

**Toni Michelle Jackson**
Crowell & Moring

1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

I further certify that the within and foregoing has been prepared in accordance

with Local Rule 5.1(C) and is in a 14-point Times New Roman font.

This 30th day of September, 2022.

    */s/ Patrick D. Jaugstetter*
Patrick D. Jaugstetter
Special Assistant Legislative Counsel
**JARRARD & DAVIS, LLP**
Georgia Bar No. 389680
*Attorney for Movants*

222 Webb Street
Cumming, Georgia 30040
(678) 455-7150 – telephone
(678) 455-7149 – facsimile
patrickj@jarrard-davis.com

    */s/ Alex Khoury*
Alex Khoury
Special Assistant Legislative Counsel
**SMITH, GAMBRELL &
RUSSELL, LLP**
Georgia Bar No. 416978
*Attorney for Movants*

1105 West Peachtree Street
NE Suite 1000
Atlanta, Georgia 30309
(404) 815-3526 – telephone
(404) 685-6826 – facsimile
akhoury@sgrlaw.com